CITY OF NEWTON vs. NORFOLK & DEDHAM MUTUAL FIRE
INSURANCE COMPANY, intervener,
(and a companion case).

No. 87-491.

Middlesex. March 15, 1988. — July 14, 1988.

Present: DREBEN, CUTTER, & KASS, JJ.

Further appellate review granted, 403 Mass. 1102 (1988).

*Insurance*, Homeowner's insurance, Coverage. *Practice, Civil,* Appeal.

On an appeal, an insurance company was precluded from raising the issue
of the proper construction of an exclusionary clause in the insurance
policy in question, where the issue was not brought to the attention of
the trial judge. [205-207]

CIVIL ACTIONS commenced in the Superior Court Department
on August 23, 1983, and March 20, 1985, respectively.

The cases were consolidated for trial and were tried before
*William H. Carey,* J.

*Joseph P. Musacchio (Robert P. Powers* with him) for the
intervener.

*Christopher C. Fallon, Jr.,* of Pennsylvania *(John A. Mav-
ricos* with him) for the plaintiff.

DREBEN, J. After a fire caused extensive damage to the
Meadowbrook Junior High School in Newton, the city brought
an action against three young persons who, it alleged, had
started a fire or fires in the school. The insurer of one of the
defendants intervened and also brought an action seeking a
declaration that its homeowner's policy did not provide cover-
age.

The actions were consolidated for trial. In response to special
questions, a jury found that the insured, Eric R. Krasnigor,
had "intended to start a fire or fires" at the school. Because
the jury also found that Krasnigor neither "specifically intended
to cause the substantial damage which was ultimately sus-
tained" at the school nor "was substantially certain that his
actions at the [school] would result in the substantial damage
which was ultimately sustained," the trial judge, relying on

*Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 86 (1984), declared that the activities of the insured were not excluded by the policy. The policy provided coverage for property damage "for which the insured is legally liable" but excluded "property damage . . . which is expected or intended by the insured." The insurer appeals from judgments entered against it in both actions.

The insurer urges us to decide that *Abernathy* does not require the insured to intend the precise injury which results for the exclusion to apply. Rather, the insurer asserts, the exclusion is also in effect when the insured intends to cause some damage (here property damage) but not necessarily the severity of damage that actually occurs. The city contends that *Abernathy* has answered this question against the insurer. While we consider the construction urged by the insurer correct and not barred by *Abernathy*, we affirm because the distinction now argued on appeal was not brought to the attention of the trial judge.

In *Abernathy*, a teenager threw a piece of "blacktop" at a car driven by Ellen Abernathy. The rock shattered the car's side window, injuring Ellen and her daughter. *Id.* at 82. The insurer claimed that a clause providing that the policy "does not apply . . . to bodily injury or property damage which is either expected or intended from the standpoint of the Insured" foreclosed coverage. In reversing a summary judgment in favor of the insurer and remanding for further proceedings, the court held that two critical issues remained for resolution: "whether [the teenager] intended, by his volitional act, to cause injury to the Abernathys or whether he knew to a substantial certainty that such injuries would ensue from his actions." *Id.* at 87. Portions of the remainder of the court's discussion appear in the margin.[1]

---

[1] "From the agreed facts, we know only that [the teenager] admitted to performing the physical act of throwing the rock at the car [footnote omitted]. The statement tells us nothing about [the] sixteen year old [youth's] state of mind at the time. We do not know whether his act was prompted by a desire to injure or merely to frighten the occupants of the car, or whether he threw the rock as part of an adolescent prank. We know nothing about [his] mental faculties at the time of the incident.

"Furthermore, even if we assume that [the youth] was fully aware of the circumstances when he threw the rock, the judge could not infer merely

The city relies on the following language of *Abernathy*:

"This court consistently has stated that the resulting injury which ensues from the volitional act of an insured is still an 'accident' within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur. See *Sheehan* v. *Goriansky*, [321 Mass. 200, 204-205 (1947)]; *Sontag* v. *Galer*, 279 Mass. 309, 312-313 (1932). Cf. *Bohaker* v. *Travelers Ins. Co.*, 215 Mass. 32, 33-34 (1913)." *Id.* at 84.[2]

Taken out of context, the city's reading is plausible. When, however, the focus of the opinion, the cases to which the court cites, and the authorities elsewhere are considered, we think the foregoing quotation does not require the city's construction and that *Abernathy* does not preclude the construction sought by the insurer: namely, that the exclusion may be invoked by a showing of a deliberate setting of a fire by the insured with the intent of causing some property damage.[3] Cf. *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 169 (1983). The following cases, involving similar exclusions, support the insurer's position. See *United Servs. Auto. Assn.* v. *Elitzky*, 358 Pa.

---

from the undisputed facts that he expected or intended harm to the Abernathys. . . . Since we also do not know [the youth's] proximity to the car when he threw the rock one cannot infer that he saw, at night, a child sitting in the rear seat of the car.

"The agreed statement also does not inform us of the relative size of the 'large piece of blacktop' which he threw. . . . Although the rock shattered the driver's side of the windshield, the statement does not tell us whether [the youth] aimed at the windshield, at the body of the car, or merely threw the rock in the general direction of the car." *Id.* at 87-88.

[2] The insurance policy in *Abernathy* provided "coverage for liability imposed on the insured where a person has sustained bodily injury by 'accident.'" 393 Mass. at 83. The policy coverage here is for bodily injury or property damage "for which the insured is legally liable." We do not consider the effect, if any, of the difference in language.

[3] We reject, however, the insurer's contention, made both to the trial judge in the declaratory judgment action and on appeal, that a deliberate intent to set a fire (as found by the jury's answer to the special question) as matter of law implies an intent to cause some property damage.

Super. 362, 373-375 (1986) ("clause excludes only injury and damage of the same general type which the insured intended to cause"). See also, e.g., *United States Fid. & Guar. Co.* v. *American Employer's Ins. Co.*, 159 Cal. App. 3d 277, 289-291 (1984); *Butler* v. *Behaeghe*, 37 Colo. App. 282, 287-288, (1976); *Hartford Fire Ins. Co.* v. *Spreen*, 343 So.2d 649, 651 (Fla. Dist. Ct. App. 1977); *Colonial Penn Ins. Co.* v. *Hart*, 162 Ga. App. 333, 335 (1982); *Farmers Ins. Group* v. *Sessions*, 100 Idaho 914, 918 (1980); *Aetna Cas. & Sur. Co.* v. *Freyer*, 89 Ill. App. 3d 617, 620 (1980); *Home Ins. Co.* v. *Neilsen*, 165 Ind. App. 445, 451 (1976) ("A defendant may assert the rock was accidentally released or was not aimed at the victim, but he will not be heard to say he intended to throw the rock softly."); *Willis* v. *Hamilton Mut. Ins. Co.*, 614 S.W.2d 251, 252-253 (Ky. Ct. App. 1981); *Iowa Kemper Ins. Co.* v. *Stone*, 269 N.W.2d 885, 887 (Minn. 1978); *Mutual Serv. Cas. Ins. Co.* v. *McGehee*, 219 Mont. 304, 307-308 (1985); *State Farm Fire & Cas. Co.* v. *Muth*, 190 Neb. 248, 252 (1973); *Lyons* v. *Hartford Ins. Group*, 125 N.J. Super. 239, 246 (App. Div. 1973); *Oakes* v. *State Farm Fire & Cas. Co.*, 137 N.J. Super. 365, 367 (1975); *Pachucki* v. *Republic Ins. Co.*, 89 Wis.2d 703, 714 (1979). Contra *MacKinnon* v. *Hanover Ins. Co.*, 124 N.H. 456, 459 (1984). See *State Farm Ins. Co.* v. *Trezza*, 121 Misc.2d 997, 1003 (N.Y. Sup. Ct. 1983); *Miller* v. *Fidelity-Phoenix Ins. Co.*, 268 S.C. 72, 75 (1977). See generally Keeton, Insurance Law § 5.4(b) (1971); Annot., 31 A.L.R. 4th 957 (1984).

Although not foreclosed by *Abernathy*, the insurer is nevertheless precluded from raising this issue on appeal as it did not adequately apprise the trial judge of its claims. None of the following documents: the insurer's complaint,[4] its requests for instructions,[5] its motion for a directed verdict, its

---

[4] Paragraph 6 of its amended complaint for declaratory relief read: "The defendant's son, Eric R. Krasnigor, intentionally broke and entered into the School and intentionally set various and numerous fires about the school building resulting in damage to the School, which damage was expected and intended by the insured."

[5] Request No. 1 read: "An occurrence is intentional and non-accidental if it is shown that the defendant specifically intended to cause the resulting harm or knew to a substantial certainty that the harm would result. *Quincy Mutual Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81 (1984)."

proposed special questions,[6] or its objections to the judge's charge, indicated to the judge its present contention that if its insured intended to cause *any* property damage by burning, the policy exclusion would apply. The insurer never informed the judge that it sought to direct the jury's attention to the question whether Krasnigor intended to cause any property damage at all to the school or its contents.

Only after the jury, in the midst of their deliberations, had submitted a question as to intent, did the insurer hint that the youth did not need to intend the extensive damage which had occurred. The entire colloquy of the judge and counsel for the insurer is reproduced in the margin.[7] We do not think the in-

---

[6] Proposed special question "1B" read: "Do you find that the defendant, Eric Krasnigor, intended to cause the resulting damage to the Meadowbrook Junior High School, now known as the Brown Junior High School?"

Proposed special question "1C" read: "Do you find that defendant, Eric Krasnigor, at the time of his actions, knew to a substantial certainty that his actions at the Meadowbrook Junior High School, on August 15, 1981, would result in the resulting damage to the Meadowbrook Junior High School, now known as Brown Junior High School?"

[7] The judge indicated he would answer the jury's question as follows:

"Intent means what was in the mind of the person at the time that any wrongful act was committed.

"The intent must consist not only of the physical act in striking the match but done under circumstances when he or she knew to a substantial certainty that substantial damage would ultimately result as the proximate cause of his or her conduct."

COUNSEL FOR THE CITY: "That is acceptable to the plaintiff."

COUNSEL FOR THE INSURER: "My problem would be to the reference of substantial damage. I don't know that the case law goes as far as to say that they necessarily had to expect the ultimate outcome of their actions but that all they had to expect was that damage would be done or that resulting harm would be done, not the substantial damage, trying to equate the entire destruction that was done with just destruction."

THE COURT: "I don't need to put in the word substantial."

COUNSEL FOR THE CITY: "Would you put in ultimate if you are going to take out substantial?"

THE COURT: "I will put in ultimate, the ultimate damage, yes."

COUNSEL FOR THE INSURER: "And I would have the same problem with that, your Honor, if my objection may be noted."

COUNSEL FOR THE CITY: "How about, "The damage that resulted" Would that be acceptable?"

THE COURT: "I think it is better if it was the resulting damage, the damage

surer's argument was sufficiently precise or timely to change the basis on which the case had been presented to the jury. The focus was once again a plea for the use of the term "resulting" damage which counsel for the insurer had sought throughout the trial as opposed to the terms "substantial" and "ultimate." See notes 4, 5 and 6, *supra*. See *Brighetti* v. *Consolidated Rail Corp.*, 20 Mass. App. Ct. 192, 197-198, and notes 5 & 7 (1985). See also *Huff* v. *Holyoke*, 386 Mass. 582, 583 n.2 (1982); *MacCuish* v. *Volkswagenwerk A.G.*, 22 Mass. App. Ct. 380, 397 (1986), *S.C.*, 400 Mass. 1003 (1987).

*Judgments affirmed.*

---

that would ultimately result as the proximate cause of his or her conduct."

COUNSEL FOR THE INSURER: "Could I have the entire instruction again?"

THE COURT: "Intent means what was in the mind of the person at the time that any wrongful act was committed."

"The intent must consist not only of the physical act in striking the match but done under circumstances when he or she knew to a substantial certainty that the resulting damage would ultimately result as the proximate cause of his or her conduct."

COUNSEL FOR THE INSURER: "Would you also add 'knew to a substantial certainty or intended?'"

THE COURT: "I think I am going to leave it as it is."

COUNSEL FOR THE INSURER: "Please note my exception."