614 A.2d 295

**HEFFERNAN & COMPANY, Appellee,**

v.

**HARTFORD INSURANCE COMPANY OF AMERICA and Hartford Accident and Indemnity Company, Appellants,**

v.

**PYE, KARR, AMBLER & COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued May 14, 1992.

Filed Sept. 28, 1992.

Thomas L. Delevie, Philadelphia, for appellants.

Jonathan K. Hollin, King of Prussia, for appellee.

Before WIEAND, OLSZEWSKI and KELLY, JJ.

WIEAND, Judge:

In this declaratory judgment action, the trial court entered a summary judgment directing that Hartford Insurance Company (Hartford) provide a defense to its insured, Heffernan & Company, in an action filed against the insured by a third party for damages resulting from the collapse of the roof of a building which had been constructed by Heffernan & Company. Hartford appealed. It contends that the policy excludes coverage for damages to work performed by the insured.

In a 1983 action against Heffernan & Company, averments of the complaint asserted that a collapse of a gymnasium roof had been caused, inter alia, by Heffernan's negligent construction of the building. "As a result of the collapse of the roof," it was alleged, "plaintiffs have sustained damages in the approximate sum of $132,000, representing the fair and reasonable value of the repairs required to restore the building at the project to a condition suitable for its intended use." Hartford refused to defend the action. It relied upon exclusions in the policy issued to Heffernan which stated that coverage does not apply

.    .    .    .    .

(n) to property damage to the named insured's products arising out of such products and any parts of such products;

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

Heffernan then filed an action for declaratory judgment. It relied upon answers to interrogatories filed in the underlying action in which the plaintiffs had recited damages to the contents of the building in excess of $24,954.00.[1] It contended

1. The contents for which a claim was made in the answers to interrogatories were listed as follows:

| | | TOTALS |
|---|---|---|
| 2 Copiers | 1,395.00 | 2,790.00 |
| 1 Wooden Desk | 835.00 | 835.00 |
| 7 Metal Desks | 624.00 | 4,368.00 |
| 15 File Cabinets | 226.00 | 3,390.00 |

that inasmuch as damages to the contents were not excluded from the coverage provided by the policy, Hartford had a duty to defend the action on behalf of its insured. The trial court agreed and entered summary judgment in favor of Heffernan and against Hartford.[2] On appeal, Hartford argues that its

| | | | |
|---|---|---:|---:|
| 1 | File Box Cabinet | 1,320.00 | 1,320.00 |
| 1 | Drafting Table | 402.00 | 402.00 |
| 2 | Storage Cabinets | 211.50 | 423.00 |
| 1 | Water Cooler (hot/cold) | 510.00 | 510.00 |
| 1 | Small Refrigerator | 219.36 | 219.36 |
| 3 | Phones | 59.95 | 179.85 |
| 8 | Calculators | 99.95 | 799.60 |
| 8 | Staplers | 21.95 | 175.60 |
| 1 | Electric Typewriter (Repaired) | | 200.00 |
| 1 | Electric Typewriter w/Memory (Repaired) | | 200.00 |
| 7 | Office Chairs | 199.00 | 1,393.00 |
| 1 | Executive Chair | 514.00 | 514.00 |
| | OFFICE EQUIPMENT TOTAL | | $17,719.41 |

Additionally, the following law books stored in the Building were ruined. Replacement cost is based upon prices from used book dealers for used books rather than prices for new books:

| | | | |
|---|---|---|---|
| Atlantic Reporter, 2d series | $3,995.00 | to | $4,200.00 |
| Purdon's Pa. Statutes | $1,095.00 | to | $1,250.00 |
| United States Code Annotated | $ 595.00 | to | $ 850.00 |
| Pennsylvania Legal Encyclopedia | $ 950.00 | to | $1,195.00 |
| Dunlap–Hannah, Pennsylvania Forms | $ 150.00 | to | $ 450.00 |
| Remmick's Orphan's Court Practice | $ 325.00 | | |
| Hunter, Orphan's Court Practice | $ 125.00 | | |

2. The declaratory judgment entered by the trial court was as follows:

AND NOW, this 30th day of July, 1991, upon consideration of the Motion for Summary Judgment of Defendant, Hartford Insurance Company of America and Hartford Accident and Indemnity Company, Plaintiff's Answer thereto, Plaintiff's Motion for Partial Summary Judgment, Defendants' Answer thereto, memorandum of law in support thereof and following oral argument, it is ORDERED and DECREED that Defendant's Motion is DENIED. Plaintiff's Motion is GRANTED.

It is further ORDERED and DECREED that defendants, The Hartford Insurance Company of America and Hartford Accident and Indemnity Co. shall provide a defense for plaintiff, Heffernan and Company in the *Moran, et al v. Marathon Mettalic Building Company and Heffernan & Company* (Montgomery County CCP No. 83–15842) litigation, as well as an indemnification for any resulting property damage claims in same, including but not limited to those already

duty to defend must be determined from the averments of the complaint and cannot be enlarged by answers to interrogatories subsequently filed in the underlying action. Because the complaint in the underlying action has not been amended to include damages to the building contents and because there is no coverage for the cost of repairing or replacing the insured's defective work, Hartford argues, there is no basis for finding coverage in the underlying action.

■ The general principles of law to be applied in determining an insurer's duty to defend in cases of this type were reviewed by the Superior Court in *State Auto Ins. Ass'n v. Kuhfahl,* 364 Pa.Super. 230, 527 A.2d 1039 (1987), as follows:

> In analyzing whether the insurer has a duty to defend, we must first look to the complaint filed against the insureds. *D'Auria v. Zurich Ins. Co.,* 352 Pa.Superior Ct. 231, 507 A.2d 857 (1986), and determine whether the insurer is required to defend. *Vale Chemical Company v. Hartford Accident and Indemnity,* 340 Pa.Superior Ct. 510, 490 A.2d 896 (1985), *reversed on other grounds,* 512 Pa. 290, 516 A.2d 684 (1986).
>
> > After discerning the facts alleged in the complaint, we must then decide whether, if those facts were found to be true, the policy would provide coverage. If it would, then there is a duty to defend. *Id.*

In *Cadwallader v. New Amsterdam Casualty Company,* 396 Pa. 582, 152 A.2d 484 (1959), our Supreme Court referred to this principle as explained by Judge Learned Hand in *Lee v. Aetna Casualty and Surety Company,* 178 F.2d 750 (2d Cir.1919). In *Lee,* an insured brought suit on a policy of liability insurance in two counts, seeking both relief from a judgment against the insured and costs in defense of the suit. Our Supreme Court in *Cadwallader* stated that the *Lee* Court found

disclosed in the *Moran* plaintiffs' Answers to Interrogatories.

Additionally, defendants shall reimburse plaintiff for all reasonable attorneys' fees incurred to the date of this Order by plaintiff in defending itself in the *Moran* litigation.

that the insurer was not obligated to pay the amount of the judgment recovered against the insured as the recovery was not one within the coverage of the policy. However, the Court went on to grant the insured his costs of defending that suit. The insurance policy in that case, as in this one, required the insurance company to defend only those claims covered by the policy. The court said, that so long as the complaint filed by the injured party covered an injury which "might or might not" fall within the coverage of the policy the insurance company was obliged to defend. In the course of the opinion they said "... the injured party might conceivably recover on a claim, which, as he had alleged it, was outside the policy; but which, as it turned out, the insurer was bound to pay. Such is the plasticity of modern pleading that no one can be positive that that could not happen. In such a case of course the insurer would not have to defend; yet, even then, as soon as, during the course of the trial, the changed character of the claim appeared, we need not say that the insured might not insist that the insurer take over the defense. When, however, *as here, the complaint comprehends an injury which may be within the policy, we hold that the promise to defend includes it.*

.    .    .    .    .

"It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defense, until it could confine the claim to a recovery that the policy did not cover ...". (Emphasis supplied).
*Cadwallader, supra* 396 Pa. at 589–90, 152 A.2d at 488. The Court in *Cadwallader* affirmed the judgment of the trial court which granted plaintiff the costs of defending an underlying malpractice suit against his insurance company which refused to defend him in a suit premised both on negligence and fraud. The former was covered in his policy, while the latter was excluded. The Court found the complaint to be sufficient to trigger a defense by the

insurance company. Thus, the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy. *Gedeon v. State Farm Automobile Insurance Company,* 410 Pa. 55, 58, 188 A.2d 320, 321 (1963) in *Seaboard Industries, Inc. v. Monaco,* 258 Pa.Superior Ct. 170, 392 A.2d 738 (1978). *Id.,* 364 Pa.Superior Ct. at 234–236, 527 A.2d at 1040–1041. Thus, the insurer has an obligation to defend its insured, even if the action against the insured is groundless, whenever the complaint filed by the injured party may potentially come within the coverage of the policy. *Gedeon v. State Farm Mutual Automobile Ins. Co.,* 410 Pa. 55, 58, 188 A.2d 320, 321–322 (1963). The duty to defend may exist even though ultimately there may be no duty to indemnify. *Id.,* 410 Pa. at 58–59, 188 A.2d at 322.

▮ The averments of the complaint support Hartford's contention that the complaint sought to recover only the cost of repairs to the building. It was only the cost of restoring the "building" for which recovery was sought. When answers to interrogatories were filed, however, the potential for an additional loss became apparent. Then, for the first time, a reference was made to damages which had allegedly occurred to contents of the building. When this potential became apparent, we conclude, Hartford incurred a duty to defend.

▮ Hartford observes that the complaint in the underlying action has not been amended to include a specific claim for damage to the contents of the building and argues that until the complaint has been amended there can be no recovery therefor. As a general rule, however, a complaint can be amended to state an additional item of damage at any time prior to trial or even before final judgment. See, e.g., *Ecksel v. Orleans Construction Co.,* 360 Pa.Super. 119, 519 A.2d 1021 (1987). Both Heffernan and Hartford are now on notice that a claim for damage to the contents of the building will probably be made in the underlying action. If that occurs, coverage will become clear. In the meantime, we conclude, the insurer has an obligation to enter an appearance on behalf of its insured in the underlying action and defend the action. This duty will continue unless and until the claim asserted against

the insured can be confined to a recovery which the policy does not cover. Therefore, the trial court correctly entered judgment declaring that Hartford has an obligation to defend Heffernan in the underlying action.

It was premature, however, for the court to order the insurer to provide "indemnification for any resulting property damage claims [in the underlying action], including but not limited to those already disclosed in the [underlying] plaintiffs' answers to interrogatories." The insurer's duty to indemnify its insured can better be determined after the nature of the damages, if any, has been determined in the underlying action. The present posture of the underlying action does not permit a summary determination of the insurer's duty of indemnification. Indeed, the complaint in the underlying action has not yet been amended to make a formal claim for any loss for which Hartford has agreed to indemnify its insured.

■ We believe it was also improper for the trial court to make a general award of counsel fees. Even the trial judge, in her opinion, concedes that Hartford properly interpreted the complaint in the underlying action, prior to the filing of answers to interrogatories, as making a claim only for defective work for which there was no coverage and that counsel fees, therefore, should not be assessed for Hartford's failure to undertake an immediate defense. The trial court has not fixed the amount of counsel fees. Indeed, the amount thereof cannot be determined summarily. If they are to be awarded, they can only be awarded from the time when the duty to defend arose. Counsel fees can be awarded only for services rendered to the insured in an amount calculated to reimburse the insured for legal services which the insurer should have provided on the insured's behalf.

The trial court's adjudication is modified by removing therefrom the general directions to Hartford to make indemnification and pay counsel fees. As so modified, the trial court's summary judgment directing Hartford to provide a defense to its insured is affirmed.