52 F.3d 689
 63 USLW 2648
 NATIONWIDE INSURANCE, Plaintiff-Appellant,
v.
Aleck ZAVALIS, Astroturf Industries, Inc., Safeco Insurance
Company of America, and the Board of Trustees of
the University of Illinois, an Illinois
Public Corporation,
Defendants-Appellees.
 No. 94-1306.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 9, 1994.
Decided April 14, 1995.
 
 Ralph Swanson, Sebat, Swanson, Banks, Garman & Townsley, Danville, IL, for Nationwide Ins.
 J. Steven Beckett, Kelly K. James, Holly Clemons, Beckett & Webber, Urbana, IL, for Aleck Zavalis.
 Traci E. Nally, Lorna K. Geiler, Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, Champaign, IL, George T. Lewis, III, Michael C. Patton, Heiskell, Donelson, Bearman, Adams, Williams & Caldwell, Memphis, TN, for Astroturf Industries, Inc., and Safeco Ins. Co. of America.
 John E. Cassidy, III, Cassidy & Mueller, Peoria, IL, for Board of Trustees of University of Illinois.
 Before CUMMINGS, FLAUM, and ROVNER, Circuit Judges.
 ILANA DIAMOND ROVNER, Circuit Judge.
 
 
 1
 Aleck Zavalis and two other students at the University of Illinois, Champaign-Urbana, set fire to the astroturf covering the University's football field. Nationwide Insurance, which insured the Zavalis family, brought this diversity action seeking a declaratory judgment that it had no duty to defend or indemnify Zavalis in the state court suit filed against him by the University. The district court dismissed the declaratory suit, believing that it required resolution of a key factual question about the nature of Zavalis' conduct that was also presented in the state suit. Because we conclude that Nationwide's duty to defend may be determined from the face of the state court complaint, we vacate the dismissal in part.
 
 I.
 
 2
 In the early morning hours of September 24, 1989, Aleck Zavalis, Glenn Schicker, and Conor Gorman, all students at the University of Illinois, Champaign-Urbana, stole into the University's Memorial Stadium, dispensed lighter fluid over a portion of the football field, and set the astroturf ablaze. The flames quickly spread, and a sizable portion of the northerly fifty yards of the playing surface was destroyed.
 
 
 3
 The University, which incurred damages in excess of $600,000, filed suit in Illinois state court against the three students as well as Astroturf Industries, Inc. and Safeco Insurance Company of America. The University's third amended complaint seeks to hold Astroturf (which manufactured the artificial turf) and Safeco (which issued a performance and warranty bond on the astroturf) liable for breach of warranty as to the flammability of the turf. The complaint asserts negligence claims against Zavalis, Schicker, and Gorman, alleging that the three intended solely to burn the letters "F-O-O"[1] into the astroturf, but carelessly permitted the fire to spread out of control. The complaint attributes the following specific negligent acts and omissions to the students:
 
 
 4
 a. attempting to emblazon the lettering on the astroturf without first determining that they could do so without the fire spreading;
 
 
 5
 b. allowing the fire to spread beyond the area they intended to burn;
 
 
 6
 c. failing to extinguish the flames once it became apparent that the fire was spreading;
 
 
 7
 d. failing to contact the local fire department or take other steps to ensure that the fire would be extinguished once they became aware that it was causing damage beyond that which they intended.
 
 
 8
 (University's Third Amended Complaint at 10.)
 
 
 9
 At the time of the mishap, Zavalis' parents, who live in Pennsylvania, maintained a homeowner's insurance policy with Nationwide. That policy provides public liability coverage for all residents of the Zavalis household (including Aleck), but expressly excludes property damage "which is expected or intended by the insured."
 
 
 10
 Nationwide filed this diversity suit pursuant to the Declaratory Judgment Act, 28 U.S.C. Section 2201, contending that it has no duty to defend Zavalis against the University's tort action and no duty to indemnify him in the event he is found liable. Invoking the policy's exclusion for expected or intentional property damage, Nationwide alleged that Zavalis and his cohorts had knowingly and intentionally set fire to the stadium astroturf and reasonably expected that damage would result from their actions. Consequently, Nationwide asserted, both the policy terms and public policy barred coverage and relieved the company of any duty to defend or indemnify. (Nationwide presently is supplying Zavalis with a defense in the state action under a reservation of rights.)
 
 
 11
 The defendants moved to dismiss the suit, contending that the action was premature so long as the state suit remained unresolved. The magistrate judge recommended that the motion be denied, but the district court rejected the recommendation and dismissed the suit. The court began with the observation that its authority under the Declaratory Judgment Act was discretionary, and that it was not compelled to issue a judgment, particularly where parallel state litigation was implicated. Order at 1-2 (quoting Crowley Cutlery Co. v. United States, 849 F.2d 273, 279 (7th Cir.1988)). In view of the potential overlap between the two suits here, the district court reasoned, the prudent course to take was to dismiss Nationwide's suit without prejudice:
 
 
 12
 While the issues to be resolved in the declaratory judgement action are not identical to the issues in the state tort case, they are so closely related that the court is persuaded to exercise its discretion to refuse to grant a declaratory judgement. Nationwide is already defending Zavalis in state court. In this court, Nationwide seeks a declaration about the nature of Zavalis' conduct--namely, did he act intentionally or negligently? The outcome of the state proceeding will in due course determine the nature of Zavalis' conduct. The state court may also determine whether Nationwide must indemnify Zavalis for any judgement entered in the tort case. Nationwide may contest the issue of coverage in the state court at no greater expense to Nationwide than this suit would be, and without asking a federal court to interfere with a state court's proceedings. Intervention by a federal court at this time would contradict the policy of the Younger doctrine. State court is the proper forum for these disputes.
 
 
 13
 Order at 2. From the dismissal, Nationwide appeals.
 
 II.
 
 14
 The Declaratory Judgment Act provides, in relevant part, that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. Sec. 2201(a). Of course, this statute does not dispense with the Article III case or controversy requirement (Trippe Mfg. Co. v. American Power Conversion Corp., 46 F.3d 624, 627 (7th Cir.1995); Deveraux v. City of Chicago, 14 F.3d 328, 330 (7th Cir.1994)), nor does it supply the court with subject matter jurisdiction (Lawline v. American Bar Ass'n, 956 F.2d 1378, 1387 (7th Cir.1992), cert. denied, --- U.S. ----, 114 S.Ct. 551, 126 L.Ed.2d 452 (1993)). And even when these jurisdictional prerequisites are satisfied, as they are here, the district court is not compelled to declare the rights and relations of the parties. Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942).[2] By its terms (in particular, "may"), the Act grants the district court "wide discretion" in deciding whether or not to exercise this authority. A.G. Edwards & Sons, Inc. v. Public Building Comm'n of St. Clair County, Ill., 921 F.2d 118, 120 (7th Cir.1990). Despite that discretion, in the interest of consistency, we review the court's decision to dismiss Nationwide's suit de novo. Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 747-49 (7th Cir.1987).[3]
 
 
 15
 When a related state action is pending, concerns about comity, the efficient allocation of judicial resources, and fairness to the parties come into play. Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1367 (9th Cir.1991). As the Supreme Court admonished in Brillhart, "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." 316 U.S. at 495, 62 S.Ct. at 1176. Yet, "the mere pendency of another suit is not enough in itself to refuse a declaration." Sears, Roebuck & Co. v. Zurich Ins. Co., 422 F.2d 587, 590 (7th Cir.1970). Instead, the federal court should consider (among other matters) whether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time. State Farm Fire & Casualty Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir.1994) (White, Associate Justice (Ret.), sitting by designation); NUCOR Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 577-78 (7th Cir.1994); American States Ins. Co. v. Kearns, 15 F.3d 142, 145 (9th Cir.1994) (Garth, J., concurring); American Casualty Co. of Reading, Pa. v. Continisio, 819 F.Supp. 385, 393 (D.N.J.1993), judgment aff'd, 17 F.3d 62 (3d Cir.1994); Sears, 422 F.2d at 590; see also Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 126-28, 88 S.Ct. 733, 746-47, 19 L.Ed.2d 936 (1968); Brillhart, 316 U.S. at 495, 62 S.Ct. at 1176.
 
 
 16
 Nationwide's declaratory suit presents a dispute that is fundamentally distinct from the matters before the state court. In the Illinois court, the University seeks to establish the liability of Zavalis and his cohorts for the damage to its football field. In the federal forum, by contrast, Nationwide (which is not a party to the state suit) seeks to resolve its obligations to defend and indemnify Aleck Zavalis under the insurance policy it issued to his parents. This issue is not before the state court, and it likely will require adjudication at some point even if the state action proceeds to judgment first. See Mhoon, 31 F.3d at 984. Yet, to the extent that Zavalis' entitlement to a defense and indemnification turns on the nature of his conduct, the declaratory action may present factual questions that the state court has also been asked to decide, raising the prospect of overlapping inquiries that concerned the district court. In assessing how real that prospect is (and thus whether the district court was correct to dismiss the suit), we must keep in mind that Nationwide's complaint implicates two distinct duties--the duty to defend and the duty to indemnify. See Aetna Casualty & Sur. Co. v. Roe, 437 Pa.Super. 414, 650 A.2d 94, 98 (1994). As we explain below, these duties must be resolved on differing factual records, a matter that has a significant bearing on the exercise of the court's declaratory power.
 
 
 17
 We shall assume in our inquiry that Pennsylvania rather than Illinois law supplies the rules for the interpretation of the insurance policy Nationwide issued to the Zavalis family. Applying Illinois' choice of law rules (see Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)), we normally look to the state where the policy was issued--here, Pennsylvania--unless doing so would produce a result contrary to the public policy of Illinois. U.S. Fire Ins. Co. v. Beltmann N. Am. Co., 883 F.2d 564, 566 (7th Cir.1989).[4]
 
 
 18
 We find no abuse of discretion in the district court's decision not to reach the matter of indemnity. As the district court observed, resolution of that duty would necessarily require it to address a factual question at the heart of the University's state court action--namely, whether the widespread damage Zavalis and the others caused was in fact intentional or, at the least, expected--and thus beyond the policy coverage--or entirely inadvertent. But the actual nature of the students' actions is a question properly left, in the first instance, to the court deciding the underlying lawsuit. It is thus settled in Pennsylvania that the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit. Heffernan & Co. v. Hartford Ins. Co. of America, 418 Pa.Super. 326, 614 A.2d 295, 298 (1992); United Services Auto. Ass'n v. Elitzky, 358 Pa.Super. 362, 517 A.2d 982, 992 (1986).[5] As Zavalis had not yet been deemed liable to the University (or, alternatively, entered into a settlement) when Nationwide filed suit, the district court was correct to dismiss without prejudice the declaratory judgment action insofar as it sought a determination of the company's duty to indemnify Zavalis.
 
 
 19
 Resolution of the duty to defend is another matter, however. The insurance company's obligation to supply a defense is most often determined primarily, if not exclusively, from the face of the underlying complaint against the insured. Pacific Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir.1985) (applying Pennsylvania law); Roe, 650 A.2d at 98, 99; Humphreys v. Niagara Fire Ins. Co., 404 Pa.Super. 347, 590 A.2d 1267, 1271 (1991); Elitzky, 517 A.2d at 985. "As long as the complaint comprehends an injury which may be within the scope of the policy, the company must defend the insured until the insurer can confine the claim to a recovery that the policy does not cover." United Services, 517 A.2d at 985; see also Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213, 1226 (3d Cir.1989) (applying Pennsylvania law); Linn, 766 F.2d at 760; Erie Ins. Exch. v. Transamerica Ins. Co., 516 Pa. 574, 533 A.2d 1363, 1368 (1987); Roe, 650 A.2d at 99; Heffernan & Co., 614 A.2d at 297-98. Any doubts on this score are to be resolved in favor of the insured. Antrim Mining, Inc. v. Pennsylvania Ins. Guar. Ass'n, 436 Pa.Super. 522, 648 A.2d 532, 535 (1994) (quoting O'Brien Energy Sys., Inc. v. American Employers' Ins. Co., 427 Pa.Super. 456, 629 A.2d 957, 960 (1993)). Thus, a court ordinarily will have no reason to immerse itself in the facts surrounding the incident in question; it need only look to the allegations made against the insured and decide whether, if proven, those allegations would establish an injury that the policy would cover.
 
 
 20
 On occasion, either the insurer or the insured may attempt to pierce the allegations of the underlying complaint and prove that the insured's conduct was not, for example, negligent as alleged, but deliberate--or vice versa. When the underlying facts and the nature of the insured's conduct are disputed, the court presiding over the declaratory action typically cannot decide whether the insured acted negligently or intentionally (and consequently whether he has coverage or not) without resolving disputes that should be left to the court presiding over the underlying tort action. This was true in Thornton v. Paul, 74 Ill.2d 132, 23 Ill.Dec. 541, 384 N.E.2d 335 (1978), a case that a number of the defendants have relied upon. There, both the insured and the individual that he had clubbed over the head contended that he had done so negligently (obligating the insurer to defend), whereas the insurance company contended that he had done so intentionally. The Illinois Supreme Court recognized that in that situation, it would be preferable for the declaratory action to await resolution until the tort suit against the insured had been resolved. Id., 23 Ill.Dec. at 552, 384 N.E.2d at 346; Allstate Ins. Co. v. Carioto, 194 Ill.App.3d 767, 141 Ill.Dec. 389, 393, 551 N.E.2d 382, 386 (1990); see also 900 Bar, 887 F.2d at 1226.
 
 
 21
 In other instances, where the underlying circumstances are either undisputed or, in light of previously established facts, beyond dispute, a court may be able to make a ready determination as to the insured's actual conduct and evaluate the duty to defend accordingly.[6] In Carioto, for example, the insured had repeatedly stabbed a man in the course of an armed robbery. The victim filed a personal injury suit against the insured. With the limitations of the insured's coverage plainly in mind, he creatively alleged that the insured had carelessly and negligently "fallen upon" him, "come into contact with" him, "failed to refrain from avoiding" him, and "struck" him. The insurance company in turn initiated a declaratory judgment action seeking to establish that the insured's actions were in fact intentional and thus outside the coverage of the insured's homeowner's policy. Based on the circumstances of the incident, the insured's plea of guilty to a charge of attempted murder, and his deposition testimony acknowledging that his actions had not been accidental, the court was satisfied that the insured's actions were deliberate, notwithstanding the contrary allegations of the victim's complaint. 141 Ill.Dec. at 393-94, 551 N.E.2d at 386-87. Pennsylvania courts have held similarly. See Nationwide Mut. Ins. Co. v. Yaeger, No. Civ. A. 93-3024, 1994 WL 447405, at * 2 (E.D.Pa. Aug. 19, 1994) (applying Pennsylvania law) ("[a] plaintiff may not dress up a complaint so as to avoid the insurance exclusion"; thus, although underlying complaint alleged that insured was "negligent, careless, and/or reckless" when he struck victim in eye with stick, exclusion applied where the complaint failed to state a prima facie claim of negligence and "[t]he undisputed facts of record allude only to an intentional tort"); Germantown Ins. Co. v. Martin, 407 Pa.Super. 326, 595 A.2d 1172, 1175 (1991) (although underlying complaint alleged that insured had shot victim "accidentally, negligently or inadvertently," injury was deemed intentional where there was "no evidence that the shooting was accidental or negligent"); see also Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co., 766 F.Supp. 324, 330 (E.D.Pa.1991) ("[t]he overstatement of a claim or the hyperbole of the pleader should not control whether an insured is entitled to a defense"), aff'd in part, rev'd in part without published opinion, 961 F.2d 209 (3d Cir.1992); Mhoon, supra, 31 F.3d at 985 (underlying complaint must allege facts that support conclusion that shooting was accidental; "abstract and completely unsubstantiated allegations will not do"). But see generally Air Prod. & Chem., Inc. v. Hartford Accident & Indem. Co., 25 F.3d 177, 179-80 (3d Cir.1994) (applying Pennsylvania law) (reiterating that with few exceptions, the duty of indemnity must be judged solely on the allegations of the complaint).
 
 
 22
 In this case, we believe that Nationwide's duty to defend can be evaluated without any excursion into factfinding that would interfere with the University's state court suit. Although the defendants insist that the district court would be compelled to decide whether Zavalis acted intentionally or negligently in the astroturf debacle, the need to do so in order to resolve Nationwide's duty to defend is not at all apparent to us. The University does not allege in its suit that Zavalis and the others intended for their exploit to culminate in a conflagration on the football field. Rather, it assumes that the students meant only to scorch a few letters into the astroturf, but carried out their mission negligently in a manner that permitted a small fire to quickly escape their control. Notably, Nationwide's declaratory complaint, as we read it, does not quibble with this premise. It merely asserts that if Zavalis deliberately spread accelerant over some portion of the playing field and set it afire, as the University has alleged, then Zavalis necessarily expected any and all damage that ensued. Amended Complaint for Declaratory Judgment p 15(A).[7] Thus, Nationwide's case does not depend on proving that Zavalis intended the degree of devastation that took place. Its sole focus is on the very premise from which the state suit proceeds: that Zavalis and his cohorts deliberately set fire to the astroturf. What happened after that, and whether or not the students intended merely to etch out a few letters or burn the stadium to the ground is by and large irrelevant, from Nationwide's viewpoint. Its contention, as we understand it, is simply that once the students took the initial step of setting fire to the field, any damage that followed was necessarily "expected," as that term is used in the insurance policy--regardless of whether the subsequent measures Zavalis took to control the fire (or his failure to take other measures) are ultimately found to be negligent. Thus, the district court need not conduct a trial to decide whether Zavalis' conduct was negligent or intentional. It need only accept the allegations of the University's lawsuit as true and consider whether the damage that allegedly resulted from the students' actions must, as a matter of law, be deemed "expected" even if, as the University has alleged, Zavalis and his companions meant to do no more than burn the letters "F-O-O" into the astroturf.
 
 
 23
 Pennsylvania case law sheds some light on this question. In Elitzky, supra, the Pennsylvania Superior Court considered whether any damage that results from an intentional act (in that case, writing and distributing defamatory letters) constitutes damage that is "expected or intended" by the insured. Because the court found the terms "intended" and "expected" to be susceptible of varying interpretations, it deemed them both ambiguous and construed them against the insurer. 517 A.2d at 987, 991. Ultimately, the court concluded that an injury can be excluded from coverage as "expected or intended" by the insured only when the insured intended to cause an injury generally similar to the harm that actually occurred or, at the least, acted despite being substantially certain that such an injury would result. Id. at 989, 991.[8] Thus, coverage cannot be denied simply because an insured acted intentionally and perhaps should have known that his conduct would have harmful consequences; he must instead have acted with the purpose of causing, or awareness that he would cause, damage. Id. at 987, 991; see also Bay State Ins. Co. v. Wilson, 96 Ill.2d 487, 71 Ill.Dec. 726, 728-29, 451 N.E.2d 880, 882-83 (1983) (insured "expected" damage when he acted with conscious awareness that injury was practically certain to result).[9] On the other hand, the court observed that the insured need not have expected or intended the precise damage that came about:
 
 
 24
 Such an approach would reward wrong-doers by affording them insurance coverage just because their plans went slightly awry. A gunman who intends to shoot a victim in the foot should not be awarded insurance coverage because his aim was faulty and he shot the victim in the heart. The gunman's intention never deviated from its wrongful path.
 
 
 25
 517 A.2d at 988. Thus, the court concluded that "[a]n insured will only be covered if he causes a harm of a generally different type than that which he set out to cause. This meager protection is hardly sufficient to embolden wrongdoers." Id. See Aetna Life & Casualty Co. v. Barthelemy, 33 F.3d 189, 191 (3d Cir.1994) (applying Pennsylvania law); Wiley v. State Farm Fire & Casualty Co., 995 F.2d 457, 460 (3d Cir.1993) (applying Pennsylvania law); Roe, supra, 650 A.2d at 100; Stidham v. Millvale Sportsmen's Club, 421 Pa.Super. 548, 618 A.2d 945, 953 (1992).[10]
 
 
 26
 Elitzky and its progeny supply a framework within which the claim against Zavalis may be examined. It would seem clear from the face of the University's state court complaint that Zavalis and the other students intended to cause some damage to the football field--if no more than burning the letters "F-O-O" into the surface.[11] Indeed, so far as we are informed, that much is undisputed.[12] But whether Zavalis "expected or intended" the more widespread damage that resulted depends, under Elitzky, on whether the actual damage may be deemed "of the same general type" as the damage that Zavalis meant to inflict. That inquiry turns on a number of factors, among them the nature and character, magnitude, and location of the intended and actual injuries. State Farm Fire & Casualty Co. v. Levine, 389 Pa.Super. 1, 566 A.2d 318, 320 (1989); Yaeger, 1994 WL 447405, at * 2. Here, of course, the most significant characteristic distinguishing the actual damage to the field from the damage Zavalis and his cohorts allegedly intended to cause is the magnitude of the harm. Yet, as Elitzky's reference to plans gone awry suggests, the mere fact that Zavalis' conduct resulted in a greater degree of damage than he meant to cause does not necessarily mean that the destruction was not "expected or intended." 517 A.2d at 988; see also City of Newton v. Krasnigor, 404 Mass. 682, 536 N.E.2d 1078, 1081-82 (1989) (high school student who deliberately started fire or fires in school could be said to have expected or intended fire damage even if ultimate damage exceeded that which he intended to cause).
 
 
 27
 In any event, this is a matter for the district court to resolve in the first instance. Because the district court never reached the merits of Nationwide's declaratory suit, the parties have not yet had the opportunity to brief the issue, and our own assessment as to the expected or intended nature of the damage to the football field would be premature. At this point, it is sufficient for us simply to note that the relatively discrete nature of the inquiry necessary in order to resolve Nationwide's duty to defend Zavalis poses no demonstrable need to engage in any extensive discovery or factfinding that might interfere with the progress of the University's action in state court.
 
 III.
 
 28
 An insured and his insurer have a mutual interest in speedy resolution of the insurer's duty to supply him a defense against a tort claim that may fall outside the coverage of the insurance policy. See Mhoon, 31 F.3d at 984; Stidham, 618 A.2d at 954. When, as here, that duty can be ascertained without the need to resolve facts that are at issue in the underlying tort suit, it is appropriate and desirable for a district court that otherwise has jurisdiction to exercise its authority under the Declaratory Judgment Act and decide the question. Thus, although we agree that Nationwide's request for a declaration as to its duty to indemnify Zavalis was properly dismissed as premature, we believe that the duty to defend Zavalis could and should have been addressed. The district court's belief that a determination of this distinct duty would require a foray into disputed facts that the state court should resolve was, as we have explained above, in error. Accordingly, although we affirm the district court's judgment insofar as it dismissed the portion of the suit requesting resolution of Nationwide's duty to indemnify Zavalis, we vacate the dismissal of the remainder of the suit and remand for further proceedings consistent with this opinion.
 
 
 29
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 
 
 [1]
 We have not been enlightened as to the significance, if any, of the lettering
 
 
 [2]
 But see A.G. Edwards & Sons, Inc. v. Public Building Comm'n of St. Clair County, Ill., 921 F.2d 118, 122 n. 5 (7th Cir.1990) (noting but declining to choose sides in circuit split as to whether Brillhart remains viable in light of the more stringent abstention principles articulated in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976))
 
 
 [3]
 There is a "simmering circuit split" over the appropriate degree of deference to be accorded a district court's decision whether to exercise its declaratory power. State Farm Fire & Casualty Co. v. Mhoon, 31 F.3d 979, 983 n. 6 (10th Cir.1994) (White, Associate Justice (Ret.), sitting by designation). Our own employment of the abuse of discretion standard in A.G. Edwards & Sons, 921 F.2d at 121, has given rise to some uncertainty as to whether we should continue to use the more searching de novo standard, as has the Supreme Court's apparent invocation, without comment, of the abuse of discretion standard in Cardinal Chem. Co. v. Morton Int'l, Inc., --- U.S. ----, ----, 113 S.Ct. 1967, 1978, 124 L.Ed.2d 1 (1993). See NUCOR Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 577 n. 4 (7th Cir.1994). We shall assume that Tempco remains good authority and review the district court's rationale in this case de novo. We are confident, however, that even if we were to embrace the more deferential abuse of discretion standard, the result in this case would be no different
 
 
 [4]
 The defendants suggest that Illinois law should govern because Aleck Zavalis lived in Illinois for the majority of the insured term. See Restatement (Second) of the Law of Conflicts Sec. 193, comment b (1971). Yet, the policy was written on a Pennsylvania home, Aleck's parents (the actual homeowners) were living there at the time of the incident in question, and Aleck himself can only claim coverage under the policy as a member of that household. Whatever interest Illinois might have in Zavalis and his alleged misdeeds, it has no identifiable contact with the insurance policy itself, see Horn v. Transcon Lines, Inc., 7 F.3d 1305, 1307 (7th Cir.1993), and it is the interpretation of that policy, not Zavalis' potential liability in tort, which is at issue here
 
 
 [5]
 Courts which conclude that there is no duty to defend will often add that there is no duty to indemnify, given that the former duty is broader than the latter. That may be appropriate when it is clear that the insured cannot be held liable under any theory that could potentially fall within the coverage of the policy. Where such a possibility exists, however (e.g., through amendment of the complaint in the underlying suit), the prudent thing for the court to do is to refrain from comment on the duty to indemnify. Grinnell Mut. Reins. Co. v. Reinke, 43 F.3d 1152, 1154 (7th Cir.1995); see also Travelers Ins. Cos. v. Penda Corp., 974 F.2d 823, 833 (7th Cir.1992)
 
 
 [6]
 Courts will therefore on occasion look beyond the complaint to evidentiary materials that may shed additional light on the duty to defend, so long as doing so does not involve them in factfinding that may overlap or interfere with the underlying litigation. See, e.g., Heffernan & Co., 614 A.2d at 298; see also Penda Corp., supra n. 3, 974 F.2d at 828 (applying Illinois law)
 
 
 [7]
 In a like vein, Nationwide contends that if Zavalis acted deliberately in setting the fire, then the conflagration does not constitute an "accident" falling within the policy's definition of a covered "occurrence." Amended Complaint p 15(B)
 
 
 [8]
 Although it analyzed the terms "intended" and "expected" separately, the court in Elitzky ultimately concluded that the two terms were synonymous for purpose of the exclusion, each connoting an element of conscious awareness on the part of the insured that an injury would occur. 517 A.2d at 991
 
 
 [9]
 The wording of Nationwide's complaint requires a caveat in this regard. Nationwide alleges that Zavalis "reasonably expected" the widespread fire damage that resulted from the prank. Amended Complaint for Declaratory Judgment p 15(A)(2). If the use of the word "reasonably" is meant to suggest that the exclusion applies if Zavalis did not actually expect some damage, but merely should have expected it, then the complaint is flawed. Elitzky clearly requires some conscious awareness that damage will result, not simply that an injury be foreseeable. 517 A.2d at 987, 991
 
 
 [10]
 In a narrow category of cases, courts have concluded based on the nature of an insured's action (e.g., child molestation) that intent to cause harm may be inferred as a matter of law. See Barthelemy, 33 F.3d at 191-92 (citing Wiley, 995 F.2d 457)
 
 
 [11]
 Of course, the mere fact that Zavalis allegedly meant to start a fire is not enough; he must have intended at least some damage to occur. See Elitzky, 517 A.2d at 987; but see City of Newtown v. Krasnigor, 404 Mass. 682, 536 N.E.2d 1078, 1081-82 (1989), rev'g City of Newton v. Norfolk & Dedham Mut. Fire Ins. Co., 525 N.E.2d 685, 687 n. 3 (Mass.App.1988)
 
 
 [12]
 Whether the insured intended to cause a particular harm typically calls for a factual inquiry into his or her subjective intent. Barthelemy, 33 F.3d at 191. But see n. 10, supra. Zavalis could, we suppose, assert that he did not intend to cause any damage whatsoever to the football field, or even to start the fire (although he has not so argued here). If indeed this premise from which both suits spring were genuinely disputed, then it might well be impossible for this suit to proceed until the issue is resolved in the state court action. On the other hand, if Zavalis is willing to concede or has already acknowledged (in state court discovery, for example) that he and his cohorts intended to start a fire and cause at least some damage to the astroturf, then the district court may proceed to consider whether the resulting damage necessarily was "expected" as a matter of Pennsylvania law