In the

# United States Court of Appeals
## For the Seventh Circuit

No. 08-2887

MEDICAL ASSURANCE COMPANY, INC.,

*Plaintiff-Appellant,*

*v.*

AMY HELLMAN, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 4:06-CV-117-AS—**Allen Sharp**, *Judge.*

ARGUED OCTOBER 29, 2009—DECIDED JUNE 21, 2010

Before FLAUM, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Dr. Mark Weinberger maintained a prosperous ear, nose, and throat practice (commonly called "ENT" by people whose first loyalty is not to J.R.R. Tolkien) in Merrillville, Indiana. Unfortunately, that was not enough for him; he supplemented his income by using his practice to defraud numerous insurance companies of millions of dollars. In September 2004, while vacationing with his wife in Greece, Weinberger

"went for a run" and did not come back. At the time, it seemed that Weinberger had no intention of returning to the United States, in all likelihood because he was facing $5.7 million in creditor claims and 22 criminal counts of billing fraud upon his return. The U.S. government took various steps, including having an international arrest warrant issued, to locate Weinberger. The parties have informed us that Weinberger was arrested in Italy in December 2009, he has been extradited to the United States, and he is now facing health care fraud charges in the Northern District of Indiana. These facts, however, are of only peripheral concern to us for the present case.

Criminal charges are not the only allegations pending against Weinberger. He is also facing more than 350 medical malpractice claims, most of which were filed after his disappearance. These claims have been proceeding through Indiana's medical malpractice process. Weinberger's medical malpractice insurance carrier, the Medical Assurance Company, Inc. ("Medical Assurance"), has been conducting his defense, but Weinberger's disappearance prompted it to file this suit. The insurance contracts between Medical Assurance and Weinberger include a typical cooperation clause, which requires Weinberger to participate in his defense. Needless to say, Weinberger was not cooperating during his extensive European "vacation." Frustrated, Medical Assurance brought a declaratory judgment action in federal court in Indiana asking the court to declare that Weinberger breached his responsibilities under the contract and therefore Medical Assurance no longer has a duty to defend or indemnify him.

The district court was concerned that such a declaration would intrude too severely on the state medical malpractice actions. It thought that Medical Assurance could not show that Weinberger's lack of cooperation was prejudicing the company without improperly interfering with the state cases. It therefore decided to refrain from going forward pending the resolution of the state court proceedings, and it issued a stay of the federal proceedings. In this appeal, Medical Assurance argues that the court erred in doing so and that it should have proceeded to resolve the merits of the declaratory judgment action. We conclude that Medical Assurance is correct. Although district courts enjoy some discretion over requests for declaratory judgments, that discretion is not unlimited. We therefore remand this case to the district court with instructions to lift the stay and to proceed to the merits. In so doing, the court will be able to take into account Weinberger's return to Indiana and any other pertinent developments.

## I

Before turning to the specifics of the appeal, we review the more prosaic facts that led to this litigation. Over the years, Weinberger saw hundreds of patients, and not all of them were happy with the care they received. In June 2004, dissatisfied customers filed the first relevant medical malpractice claims. As mentioned above, Weinberger vanished in September 2004; by then, only three cases had been filed. After his disappearance became public, however, the number of malpractice claims ballooned to more than 350.

Indiana's medical malpractice insurance system is governed by statute. In 1975, Indiana adopted a comprehensive system to regulate medical malpractice insurance and claims. See IND. CODE §§ 34-18-1-1 to -18-2. The Medical Malpractice Act ("the Act") offers certain benefits, including a limitation on liability, to qualified providers who meet statutorily-defined requirements, such as holding malpractice insurance above prescribed levels. Qualified providers contribute funds to the Indiana Patient's Compensation Fund (PCF), which is then available to pay any damages over the statutory threshold, as well as damages that the doctor and his insurance provider fail to pay. See *id.* §§ 34-18-6-1, -15-3 & -15-4. As the payor of last resort, PCF has an interest in this case; it is represented by the defendant Commissioner of the Indiana Department of Insurance and Administrator of the PCF (an office that was held by James Atterholt at the time suit was filed, but that is now filled by Carol Cutter—we refer simply to "the Commissioner").

The Act also introduced a new procedural mechanism for medical malpractice claims. In brief, it provides that a medical review panel must issue an opinion on every medical malpractice claim before that claim may be pursued in Indiana courts. *Id.* § 34-18-8-4. Complaints are filed with the Indiana Department of Insurance (IDOI) and, after 20 days, any party may request the formation of a medical review panel, which is made up of three independent (volunteer) physicians. *Id.* § 34-18-10-2. The panel issues an opinion on the merits (*e.g.,* the doctor's compliance with the standard of care, causation, damages).

*Id.* § 34-18-10-22. The panel's decision is not binding, but it is admissible as evidence in the state court action. *Id.* § 34-18-10-23.

We are aware of only four cases in which medical review panels have rendered opinions on claims against Weinberger: three concluded that damages should not be available, and one found substandard care and nonpermanent injuries. Only those four cases have moved from the review-panel stage to an actual lawsuit in state courts. None of the cases has proceeded to judgment. Weinberger's absence from the country for more than five years already has had consequences in these cases; as a result of his failure to cooperate with the medical review panel process, the Lake County Superior Court entered an order in 2006 prohibiting him from testifying in the medical review panel proceedings or in the subsequent state court trial proceedings. As far as the record before us shows, its order applies to at least 285 of the pending claims.

Between 1996 and 2004, Medical Assurance provided professional liability insurance coverage to Weinberger and his businesses under various policies. The contractual provisions relevant to this appeal are the same in all of the policies. They provide that Medical Assurance has a duty to defend and indemnify Weinberger, but Medical Assurance is relieved of those duties if Weinberger violates the policy's cooperation clause, which is found in Paragraph 5 of the General Conditions and Requirements for each policy and reads as follows in relevant part:

[The insured] must fully cooperate with Medical Assurance and defense counsel in the investigation, handling, and defense of the legal proceeding. [The insured's] duty to cooperate includes, but is not limited to:

- When requested, attendance at and preparation for meetings, hearings, depositions, and trials;

- Securing and providing evidence and assisting in obtaining the attendance of witnesses;

- Truthfully and completely informing Medical Assurance about the facts and circumstances which surround any professional incident or legal proceeding and, specifically, the nature of [the insured's] acts or omissions, so that Medical Assurance may correctly assess liability;

- Supplementing the information previously provided to Medical Assurance or defense counsel as additional information becomes known to [the insured].

This clause underlies Medical Assurance's request for declaratory relief. We turn now to the procedural history of that claim in its federal court action.

## II

ProNational Insurance Company ("ProNational") filed the original complaint in this case on August 1, 2006. On November 1, 2006, Medical Assurance, an affiliate of

ProNational, filed an amended complaint in its own name. Medical Assurance is an Alabama corporation with its principal place of business in Alabama. It named as defendants the more than 300 claimants in the Indiana medical malpractice proceedings, the Commissioner, Weinberger himself (a citizen of Illinois), and four "Entity defendants" through which Weinberger practiced: Mark S. Weinberger, MD, PC (an Indiana professional corporation with its principal place of business in Merrillville, Indiana); plus three limited liability corporations—the Nose and Sinus Center, LLC, the Merrillville Center for Advanced Surgery, LLC, and the Subspecialty Centers of America, LLC—all of which had Weinberger as their sole member and were thus Illinois citizens. (We refer to Weinberger and the Entity defendants collectively as the "Weinberger defendants.")

Medical Assurance's amended complaint asks the court to issue the following declaratory judgment (we quote here from the document):

>   1.   That Weinberger has failed and refused to assist and/or cooperate with the defense of the Claims [meaning the individual malpractice claims];
>
>   2.   That Weinberger's failure to assist and cooperate in the defense of the Claims constitutes a material breach of the contracts of insurance between the Weinberger Defendants and Medical Assurance . . . ;
>
>   3.   That Medical Assurance has been prejudiced by Weinberger's failure and refusal to assist and/or cooperate with the defense of the Claims;

4.    That Medical Assurance is under no obligation to defend the Claims on behalf of any of the Weinberger Defendants;

5.    That Medical Assurance is under no obligation to pay any judgments, damages, costs or expenses which are associated with or arise out of the Claims, or to indemnify the Weinberger Defendants for any such amounts;

6.    Medical Assurance owes no defense or coverage under the Policies in connection with the claims alleged by [one of two named claimants], or any other Claimants who have asserted "fraud-based" claims, pursuant to the coverage exclusion contained in the Policies for such fraud-based claims.

For our purposes, it is possible to carve out a couple of issues that are not central to this appeal. First is the request based on the fraud exclusion, which Medical Assurance did not mention in this court. Second is the duty-to-indemnify point, which will not be ripe until liability has been established. See *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (collecting cases and applying this rule to a declaratory judgment action). The district court was aware that the duty-to-indemnify claim was not ripe, but rather than dismiss that aspect of the case, it included it in the stay that was issued. The proper disposition, however, would have been to dismiss. See *Nationwide Ins. v. Zavalis,* 52 F.3d 689, 693 (7th Cir. 1995).

This appeal therefore focuses only on Medical Assurance's duty-to-defend claim. Before the completion of

discovery and the hearing of summary judgment motions, the Commissioner asked the district court to stay the declaratory judgment action until the state proceedings resolved the underlying liability issues. At the direction of the district court, a magistrate judge heard arguments and recommended a stay. The district court accepted that recommendation and granted the motion to stay, finding that comity and judicial economy supported the suspension of the federal court case until the parallel state proceedings resolved the overlapping factual issues.

## III

Before turning to the merits, we need to resolve two jurisdictional issues. First, the claimant defendants suggest that the district court may lack subject-matter jurisdiction over the case. Medical Assurance alleged jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332(a). The question is whether the plaintiff demonstrated that the parties are of diverse citizenship; no one contests the existence of more than $75,000 in controversy.

The district court found, and the record supports the proposition, that Medical Assurance is a citizen of Alabama, since it is an Alabama corporation with its principal place of business in Alabama. Medical Assurance specifically alleged the citizenship of each defendant; we have reviewed those allegations above. The only problem comes because the individual defendants, who are pressing malpractice claims, were described in both the original and amended complaints "on information and belief" as citizens of Indiana. No defendant

asserted that she is a citizen of Alabama. On that basis, the district court concluded that "[u]nless and until a Defendant comes forward with such evidence, the Court will not further consider the Notice of Jurisdictional Defect."

"[A]n appellant's naked declaration that there is diversity of citizenship is never sufficient." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 533 (7th Cir. 2007). Although we have said that affidavits alleging citizenship based on "the best of my knowledge and belief" are, by themselves, insufficient to show citizenship in a diversity case, *America's Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992), the plaintiff here offered more than that. Medical Assurance alleged a particular state of citizenship of each claimant (*i.e.*, Indiana, or perhaps Illinois); each claimant is pursuing relief under the Indiana medical malpractice system; and the defendants—who are in the best position to furnish evidence of their citizenship—have declined the opportunity to challenge the factual basis of Medical Assurance's allegation. Weinberger has not participated in any of these proceedings, and thus has not proffered any evidence contradicting the position of Medical Assurance that the claimants are all citizens of Indiana or Illinois— and that none is a citizen of Alabama. This is enough for now; obviously, if information to the contrary emerges on remand, the district court must stand ready to re-evaluate its jurisdiction.

Second, defendants challenge appellate jurisdiction. The district court's decision to stay its proceedings is not one

of the interlocutory orders that falls within 28 U.S.C. § 1292. If it is appealable at all, it must be because it is authorized by the final-judgment statute, 28 U.S.C. § 1291. The closest analogy to a stay of a declaratory-judgment action is a straightforward stay when a district court decides to abstain. Abstention-based stay orders are immediately appealable under *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 714-15 (1996). See, *e.g.*, *Montano v. City of Chicago,* 375 F.3d 593, 598 (7th Cir. 2004); *Doctor's Assocs. v. Duree,* 375 F.3d 618, 622 (7th Cir. 2004). The district court was quite aware of its discretion under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, see *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 494-95 (1942), *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286-90 (1995). It nevertheless labeled its decision to stay its proceedings as a form of abstention. In so doing, it emphasized the question whether the Indiana malpractice claims covered essentially the same ground as the federal case (or as the court put it, were parallel to the declaratory judgment action). Concluding that the answer was yes, it stayed the entire action. Whether or not the term "abstention" is optimal here—a question that we address below—we conclude that the district court's stay is the kind of order that the Supreme Court had in mind in *Quackenbush,* and so we conclude that our appellate jurisdiction is secure.

## IV

The declaratory judgment device has been around for a little less than a century in the United States. In 1922,

the National Conference of Commissioners on Uniform State Laws and the American Bar Association published the Uniform Declaratory Judgments Act, which was to be a model state law. UNIF. DECLARATORY JUDGMENTS ACT, §§ 1 *et seq.* Twelve years later, Congress adopted the Federal Declaratory Judgment Act. 28 U.S.C. §§ 2201-02. The key language in the statute provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id.* § 2201(a).

In a sense, the Declaratory Judgment Act is relatively modest: it is a procedural innovation that does not expand the jurisdiction of the federal courts. It does not, and arguably could not, affect the underlying substantive state and federal laws that define the rights of the parties. See, *e.g.*, *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227 (1937) (affirming the constitutionality of the Act, provided that the court has jurisdiction over an actual case or controversy); *Nashville, Chattanooga, & St. Louis Ry. v. Wallace,* 288 U.S. 249, 261-65 (1933) (applying the same limitation to the Supreme Court's review of a Tennessee state-court decision based on the state's declaratory judgment act). A federal court applying the Declaratory Judgment Act must evaluate the parties' rights based on the same body of substantive law that would apply in a conventional action.

The goal of the Declaratory Judgment Act is to allow for the efficient resolution of disputes by an early ad-

judication of the rights of the parties. See, *e.g.*, *E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir. 1937) ("It was the congressional intent to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued."); 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2751 (3d ed. 1998) ("The remedy made available by the Declaratory Judgment Act . . . relieves potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never. It permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty and it helps avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligations of litigants.") (internal quotation marks and footnotes omitted).

By its terms, the Declaratory Judgment Act gives the district court the discretion to declare the rights of the litigants, 28 U.S.C. § 2201(a); it explicitly says that upon a proper application, the district court "may" declare the party's rights. The Supreme Court has consistently understood this language as discretionary:

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.

Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Wilton, supra,* 515 U.S. at 288 (footnote omitted); see also *Brillhart, supra,* 316 U.S. at 494-95 (setting the standard for discretion where parallel state proceedings are pending). We thus review the district court's decision only for abuse of discretion. *Wilton,* 515 U.S. at 289-90 ("[D]istrict courts' decisions about the propriety of hearing declaratory judgment actions, which are necessarily bound up with their decisions about the propriety of granting declaratory relief, should be reviewed for abuse of discretion."); *Envision Healthcare, Inc. v. PreferredOne Ins. Co.,* No. 09-2019, slip op. at 5 (7th Cir. May 12, 2010). The question whether an abstention doctrine is applicable, in contrast, is something that we review *de novo*. See *R.R. St. & Co. v. Vulcan Materials Co.,* 569 F.3d 711, 714 (7th Cir. 2009).

A

As we already have observed, the district court's primary reason to refrain from proceeding with Medical Assurance's declaratory judgment action was its perception that parallel proceedings were underway before

Indiana's malpractice panels and courts. Although this was an appropriate factor to consider for purposes of both the Declaratory Judgment Act and most abstention doctrines, it is important to note at the outset that a finding of parallel suits does not end the inquiry.

In *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976), the Supreme Court reaffirmed that abstention is the exception, not the rule, and it applies only in limited circumstances. *Id.* at 813-20. We have understood that the existence of a parallel proceeding—*i.e.* an overlapping case in a state court—is a requirement for exercising "*Colorado River* abstention." See *Beck v. Dobrowski,* 559 F.3d 680, 686 (7th Cir. 2009). That branch of abstention doctrine is invoked when, in the interest of wise judicial administration, it is desirable for one court to yield to another. See *Doctor's Assocs., supra,* 375 F.3d at 622.

Courts often describe the question whether similar action should be taken in a declaratory judgment case as "*Wilton/Brillhart* abstention," referring to the two leading cases in this area. Use of the term "abstention," however, is not entirely accurate, as it normally refers to a group of judicially-created doctrines. The decision to stay an action under the Declaratory Judgment Act does not require the court to reach for a judicially-created abstention doctrine. Rather, the Act itself provides the district court with the necessary discretion. And unlike *Colorado River* abstention, discretion under the Declaratory Judgment Act does not turn on the existence of parallel proceedings. *Wilton*, the Supreme Court's most recent

pronouncement on these issues, creates no such require-
ment. 515 U.S. at 282-90. If the district court thought
that its discretion depended solely on a finding of
parallel proceedings, it was mistaken.

That said, parallel proceedings do figure in the
holding of *Wilton*. There the Court stated:

> [W]e conclude that [*Brillhart*] governs this declaratory
> judgment action and that district courts' decisions
> about the propriety of hearing declaratory judgment
> actions, which are necessarily bound up with their
> decisions about the propriety of granting declaratory
> relief, should be reviewed for abuse of discretion. We
> do not attempt at this time to delineate the outer
> boundaries of that discretion in other cases, for ex-
> ample, cases raising issues of federal law or cases in
> which there are no parallel state proceedings. Like the
> Court of Appeals, we conclude only that the District
> Court acted within its bounds in staying this action
> for declaratory relief where parallel proceedings,
> presenting opportunity for ventilation of the same
> state law issues, were underway in state court.

*Id.* at 289-90. *Wilton* thus holds that the Declaratory Judg-
ment Act confers discretion on the district courts to
decline to hear cases. One factor supporting a decision to
stay an action is the existence of adequate parallel pro-
ceedings. See *Sta-Rite Indus. v. Allstate Ins. Co.*, 96 F.3d 281,
287 (7th Cir. 1996). But the Court did not indicate that
parallel proceedings were either necessary or sufficient.
Even if there is no parallel proceeding, the district court
still has discretion to decline to hear a declaratory judg-

ment suit. See, *e.g., Scottsdale Ins. Co. v. Detco Indus.,* 426 F.3d 994, 998 (8th Cir. 2005) (describing an approach "allowing the federal district court some, but not complete, discretion in determining whether to dismiss or stay declaratory actions when there are no parallel state court proceedings"); *Sherwin-Williams Co. v. Holmes County,* 343 F.3d 383, 392-94 (5th Cir. 2003) (collecting cases where courts dismissed declaratory judgment actions where no parallel state proceeding existed).

We discussed these principles in *Nationwide Insurance v. Zavalis, supra.* In that case, an insurer sought a declaration that it was not required to defend and indemnify an insured (Zavalis) in the state court action against him. We described the proper inquiry as asking "how real [is the] prospect" that "the declaratory action may present factual questions that the state court has also been asked to decide." 52 F.3d at 693. This question is broader than a simple inquiry into whether proceedings are "parallel." To answer it, we reviewed the overlap between the federal and state proceedings in light of the substantive law that informed the declaratory judgment action and the underlying liability case. See *id.* at 692 ("[T]he federal court should consider (among other matters) whether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is available to the plaintiff

seeking a declaratory judgment in another forum or at another time."). We found there that the request for declaratory judgment could be heard "without any excursion into fact finding that would interfere with the . . . state court suit." *Id.* at 695.

B

With these principles in mind, we are ready to resolve Medical Assurance's appeal. We begin with a brief discussion of the Indiana law that provides the basis for the underlying litigation against Weinberger. The state cases are proceeding under the familiar framework for a medical-malpractice claim: the plaintiff must show that the defendant owed a duty to the plaintiff, that he breached his duty by conduct falling below the standard of care, and that the breach proximately caused a compensable injury. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 760 (7th Cir. 2004). In addition, Indiana has added a condition precedent: all medical malpractice cases must be submitted first to a medical review panel. Medical Assurance is not, and cannot be, a party in the panel process.

That does not mean that Medical Assurance is indifferent to the outcomes reached by the panels, of course. Quite to the contrary: it is rational to think that malpractice cases blessed by the panels have a much higher likelihood of success (and, practically, a higher settlement value) than cases for which the panel finds no merit. Medical Assurance would like a declaratory judgment to get it off the hook altogether on the policies it wrote

for Weinberger. It argues that the court can and should declare that its obligations to Weinberger are over, because of his failure to comply with the policies' cooperation clauses. In Indiana, however, an insurer cannot prevail on that theory unless it can show that the breach resulted in actual prejudice. *Emplrs. Mut. Cas. Co. v. Skoutaris,* 453 F.3d 915, 924 (7th Cir. 2006); *Ky. Nat'l Ins. Co. v. Empire Fire & Marine Ins. Co.,* 919 N.E.2d 565, 585-87 (Ind. Ct. App. 2010). Indiana law also has something to say about proving actual prejudice. The insured's absence alone is not enough to establish prejudice; to prove actual prejudice, the insurer must show somehow that the outcome of the underlying case would have been altered by the insured's cooperation. See *Cincinnati Ins. Co. v. Irvin,* 19 F. Supp. 2d 906, 916 (S.D. Ind. 1998) ("[The requirement] that the insurer must prove at least a reasonable probability of actual prejudice caused by the insured's failure to appear is in harmony with the more general Indiana holdings that the insurer must prove prejudice, and that prejudice requires proof that the insured's failure to cooperate actually produced a judgment less favorable in the underlying tort action."). See also *Ky. Nat'l Ins.,* 919 N.E.2d at 586-87.

The magistrate judge and the district court took these provisions of Indiana law into account, but only as part of the inquiry into the question whether the state and federal proceedings were parallel. This unfortunately diverted the parties into a lengthy discussion of the true meaning of "parallel." On the positive side, this cast some light on the question of actual prejudice, which is a subject that will necessarily arise in both sets of cases. The

district court noted that the prejudice inquiry depends on whatever facts and defenses in the state cases are rendered unavailable by Weinberger's lengthy period of unavailability and the materiality of those defenses. The district court also thought that the Indiana courts were likely to make findings of fact on the significance of Weinberger's disappearance to the medical malpractice claims. These considerations led the court to conclude that it could not decide the declaratory judgment action without an inappropriate degree of interference with the pending and anticipated state court actions.

Medical Assurance points out, however, that the scope of Weinberger's insurance coverage is not at issue in the state court actions. It represents that it is prepared, if it gets its day in the district court, to meet its burden of showing actual prejudice from Weinberger's actions. Without this declaratory judgment action, it pleads, it will be left without a practical remedy.

As we said earlier, the Declaratory Judgment Act has no effect on the substantive law that governs a case, whether that is found in federal or state law. We therefore (as did the district court) accept the fact that the law of Indiana requires plaintiffs to show actual prejudice. But the district court said more; the district court also said that it would be impossible for Medical Assurance to show actual prejudice without interfering with the state processes. The latter proposition, in our view, does not follow. We can imagine ways in which Medical Assurance might try to establish actual prejudice that would unacceptably intrude on the state cases, but other ways

might not run that risk. Medical Assurance has not had the opportunity to develop its position or even to discover the facts that would support it. We are not willing to assume that the only way Medical Assurance can prove its case is through an excursion into factual questions that the state courts have been, or will be, asked to address. See J.R.R. TOLKIEN, THE FELLOWSHIP OF THE RING 58 (Houghton Mifflin Co. 1994) ("For even the wise cannot see all ends.").

We also find some ambiguity in the stay that the district court entered. It is not clear to us whether the district court meant to allow Medical Assurance to proceed after a small number of test cases in state court, or if it meant to preclude Medical Assurance from any federal litigation until every state case reaches final judgment. The Commissioner told us that the district court could not rule on the declaratory judgment claim without evaluating the facts of every malpractice case. If that were true, it would certainly cast doubt on the wisdom of proceeding with the declaratory judgment action. But we think it too soon to draw this conclusion. Further exploration of Medical Assurance's arguments will demonstrate whether, or the extent to which, the state court decisions might inform the declaratory judgment action and, if so, whether those decisions involve common issues that can be extrapolated from a few state cases.

We understand that more recent events—especially the return of Weinberger to Indiana—may influence the district court on remand. The state medical malpractice

proceedings will go forward, which may provide guidance to the parties and the court in resolving the actual-prejudice inquiry. And on remand, a summary judgment motion could test Medical Assurance's legal theories, based on all the evidence that has been collected thus far. See FED. R. CIV. P. 56. Indeed, summary judgment is a good tool to examine not only whether Medical Assurance can succeed as a matter of law but also whether this case is a suitable candidate for declaratory relief.

The purpose of the Declaratory Judgment Act is to facilitate efficient outcomes. Here, that purpose is best effected by allowing Medical Assurance to go forward with its challenge to its duty to defend. See *Ill. Sch. Dist. Agency v. Pac. Ins. Co.*, 471 F.3d 714, 720 (7th Cir. 2006) ("[A]n insurer that believes it has no duty to defend a tendered claim can avoid liability if it either: 1) defends under a reservation of rights or 2) seeks a declaratory judgment that it has no obligation to defend."). That question is sufficiently distinct from the issues that have arisen thus far in the state proceedings, and the value of having a single ruling about the effect of Weinberger's behavior on his contractual relations with Medical Assurance is so great, that we conclude that it was an abuse of discretion to stay this action.

For these reasons, we VACATE the stay and REMAND the case for further proceedings consistent with this opinion.