**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2782
_____

NORBERT MCDERMOTT,

Appellant

v.

CLONDALKIN GROUP, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-15-cv-00341)
District Judge: Honorable Mary A. McLaughlin
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 22, 2016
_____

Before: GREENAWAY, JR., VANASKIE, and SHWARTZ, *Circuit Judges*.

(Opinion Filed: May 18, 2016)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

VANASKIE, *Circuit Judge.*

Norbert McDermott appeals the dismissal of his complaint against his former employer, Clondalkin Group, Inc. We disagree with the District Court's determination that McDermott's Amended Complaint failed to plead viable claims of relief. As such, we will vacate the order of dismissal and remand for further proceedings.

I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we set forth only those facts necessary to our analysis.

Norbert McDermott is the former CEO of U.S. Operations for Clondalkin Group, Inc. During his employment, McDermott participated in a bonus plan (the "Bonus Plan"), pursuant to which he was to receive an annual bonus upon Clondalkin attaining certain results. Specifically, the Bonus Plan was predicated upon two factors: (1) Clondalkin's earnings before interest, taxes, depreciation, and amortization ("EBITDA"), and (2) "working capital objectives." The 2013 Bonus Plan, revised on September 15, 2013, provided that McDermott could "qualify for bonus payments up to 60% of [his] salary as of January 2013, split as to 50% on EBiTDA targets and 10% on working capital objectives[.]" App. 190. The Bonus Plan explained how the working capital objectives and EBITDA were to be measured and dictated that Clondalkin's supervisory board would "have the final authority in determining the Ebitda and Working Capital calculations[.]" *Id.*

2

By letter agreement signed September 30, 2013 (the "Severance Agreement" or the "Agreement"), McDermott and Clondalkin set forth the terms and conditions for the termination of McDermott's employment with Clondalkin, effective December 31, 2013. *See* App. 192–94. Relevant here, the Severance Agreement provided that Clondalkin would pay McDermott the following:

> [A]ny bonus or incentive compensation earned through December 31, 2013 based on the actual achievement of performance criteria as determined by [Clondalkin] in accordance with the terms of [Clondalkin's] bonus plan . . . payable at the same time annual bonuses are generally paid to other senior executives of the Company and in no event later than March 15, 2014[.]

App. 192. The Severance Agreement also provided that it was to "be construed in accordance with the laws of the State of Delaware." App. 194.

Clondalkin eventually paid McDermott $74,005 as his 2013 bonus. Dissatisfied with the amount of the bonus, McDermott repeatedly asked Clondalkin to provide the basis for its calculation. Clondalkin refused and its executives indicated that they would no longer communicate with McDermott. In response, McDermott hired counsel to assist him with this matter. McDermott's counsel twice requested that Clondalkin provide support for its bonus calculation. His counsel also offered to enter into a confidentiality agreement to alleviate concerns over the proprietary nature of any financial information being disclosed. Clondalkin still did not comply.

Unable to get information regarding his bonus—the EBITDA information, in particular—McDermott commenced an action in the Court of Common Pleas for

3

Philadelphia County, Pennsylvania by filing a Praecipe to Issue Writ of Summons. Consistent with Pennsylvania procedural rules, McDermott then sought pre-complaint discovery. Clondalkin, however, continued to refuse to provide the requested information, and instead invoked a procedural device to compel McDermott to file a complaint. On January 5, 2015, McDermott filed his Complaint, asserting two causes of action: (1) breach of contract and (2) a violation of the Delaware Wage Payment and Collection Act ("WPCA"), Del. Code Ann. tit. 19 §§ 1101–1115.

On January 23, 2015, Clondalkin removed the case to the United States District Court for the Eastern District of Pennsylvania. On April 7, 2015, the District Court granted Clondalkin's first Motion to Dismiss, calling McDermott's Complaint "wholly inadequate" because it "fail[ed] to identify any express contract provision that was breached" and "fail[ed] to assert any facts to support the allegations that [Clondalkin] breached the agreement or bonus plan and that [McDermott] was paid less than was owed to him under the bonus plan." App. 171. The District Court granted McDermott leave to amend his original Complaint, and specifically instructed him to "add as much specificity as he can to any amended complaint." App. 172.

On May 7, 2015, McDermott filed his Amended Complaint, which asserted the same two causes of action as the original Complaint but added more information. On June 30, 2015, the District Court granted, with prejudice, Clondalkin's Motion to Dismiss the Amended Complaint after finding that "McDermott's amended complaint fails to provide any facts to support his claim that [Clondalkin] breached either the Bonus Plan or

4

the Severance Agreement by failing to pay him the full amount of his bonus." App. 4. In this regard, the District Court found that "the amended complaint offers only speculation that McDermott's bonus payment was calculated improperly and that he should have received a payment of at least $200,000" and that "[s]uch speculation cannot put the defendant on notice of the breach of contract claim asserted against it."[1] *Id*.

This appeal followed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a). We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of a District Court's decision to grant a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 206 (3d Cir. 2009). We are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014) (quotation marks and citations omitted). "However, . . . we disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 n.2 (3d Cir. 2016) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)).

---

[1] The District Court also concluded that because the WPCA claim depended on the existence of a viable breach of contract claim, it too was subject to dismissal at the pleadings stage.

5

III.

In *Connelly*, we reiterated the established standard that "detailed pleading is not generally required" and that, instead, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." 809 F.3d at 786 (quoting, *inter alia*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). We further reiterated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps." *Id*. at 787 (footnote omitted). First, the reviewing court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal,* 556 U.S. at 675. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Finally, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Applying this framework here, we find that the Amended Complaint's factual allegations provide Clondalkin with adequate notice of McDermott's claims for relief and the grounds upon which they rest.

**A. Step One: Noting the Elements Necessary to State a Claim.**

6

The first step requires the reviewing Court to take note of the elements the plaintiff must plead to state a claim. The parties correctly note that Delaware law applies to this breach of contract claim. The parties also correctly note that to state a breach of contract claim under Delaware law, McDermott must plead (1) the existence of a contract, (2) the breach of a contractual obligation, and (3) a resultant damage. *See VLIW Tech., LLC v. Hewlett–Packard Co.,* 840 A.2d 606, 612 (Del. 2003). Because McDermott attached the Bonus Plan and the Severance Agreement to the Amended Complaint—the operative contracts in this case—only the final two elements are at issue. Therefore, at this early stage of the proceedings, McDermott's breach of contract claim may survive if he pleads sufficient factual allegations "to raise a reasonable expectation that discovery will reveal evidence" of a breach of contract and resultant damage. *See Connelly*, 809 F.3d at 789 (quoting, *inter alia*, *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

**B. Step Two: Identifying and Excluding Conclusory Allegations**

The second step requires us to identify and exclude those allegations that, being merely conclusory, are not entitled to the presumption of truth. In *Connelly*, this Court noted that "[a]lthough the District Court considered the Amended Complaint to be 'extremely vague and conclusory,' it did not specifically identify any allegations that, being mere legal conclusions, should have been discounted." 809 F.3d at 790. Likewise, here, the District Court failed to point to any allegations that were conclusory. Instead, the District Court simply found that "McDermott's amended complaint fails to provide *any facts* to support his claim" and that "the amended complaint offers *only speculation*

7

that McDermott's bonus payment was calculated improperly and that he should have received a payment of at least $200,000." App. 4 (emphases added).

Clondalkin argues that the Amended Complaint's allegations are merely "legal conclusions couched as factual allegations[.]" Appellee's Br. at 14. It also insinuates that "the Rules of Civil Procedure do not allow" facts pleaded upon information and belief "to serve as the sole basis for relief." *Id.* at 16. Both of these arguments lack merit, but we will start with the second.

Clondalkin's second argument—insinuating that the Federal Rules of Civil Procedure do not permit facts pleaded upon information and belief to serve as the sole basis for relief—is plainly incorrect. This Court has explained that pleading upon information and belief is permissible "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control"—so long as there are no "*boilerplate and conclusory allegations*" and "*[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible*." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)). In fact, this Court has explained that "[s]everal Courts of Appeals accept allegations 'on information and belief' when the facts at issue are peculiarly within the defendant's possession." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015) (citing *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.,* 631 F.3d

436, 442–43 (7th Cir. 2011); *Med. Assur. Co. v. Hellman*, 610 F.3d 371 (7th Cir. 2010); *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010)).[2]

Here it is undisputed that the EBITDA information is solely within Clondalkin's control. Therefore, McDermott may plead allegations based upon information and belief, so long as he does not rely on boilerplate and conclusory allegations and he accompanies his legal theory with allegations that make his theoretically viable claim plausible.

Because McDermott may plead allegations based upon information and belief, we next address Clondalkin's other argument—that McDermott's allegations are merely legal conclusions couched as factual allegations. We have explained that "the clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point." *Connelly*, 809 F.3d at 790.

We find that the allegations in the Amended Complaint do not "paraphrase in one way or another the pertinent statutory language or elements of the claims in question." *Id*. Instead, the allegations explain *how* Clondalkin allegedly breached the contract.

For example, in the six allegations Clondalkin uses as examples of boilerplate and conclusory allegations, McDermott alleges that Clondalkin breached the contract in the following ways: (1) by "not comply[ing] with either the Agreement or the Bonus Plan[,]"

---

[2] The Second Circuit has accepted allegations on information and belief "where the belief is based on factual information that makes the inference of culpability plausible[.]" *Arista*, 604 F.3d at 120 (citing *Iqbal*, 556 U.S. at 678). The Seventh Circuit is even more lenient, permitting allegations upon information and belief "so long as (1) the facts constituting the [allegation] are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *Pirelli*, 631 F.3d at 443 (citation omitted).

App. 178 at ¶ 33; (2) by "pa[ying] Mr. McDermott . . . less than 50% of the amount owed to him under the terms of the Agreement and Bonus Plan[,]" App. 178 at ¶ 34; (3) by "not calculat[ing] the EBiTDA component of Mr. McDermott's 2013 annual bonus in accordance with the terms of the Bonus Plan[,]" App. 178 at ¶ 35; (4) by "intentionally understat[ing] EBiTDA by at least 50% when calculating Mr. McDermott's 2013 annual bonus[,]" App. 178–79 at ¶ 36; (5) by "underpa[ying] the EBiTDA component of Mr. McDermott's 2013 annual bonus by at least fifty percent[,]" App. 179 at ¶ 37; and (6) by "not exercis[ing] its final authority reasonably when calculating EBiTDA under the Bonus Plan[,]" App. 179 at ¶ 39. These allegations explain *how* Clondalkin allegedly breached the contract. They are buttressed by other allegations concerning Clondalkin's historical financial performance, such that McDermott had a reasonable expectation of a larger bonus. These allegations must be accepted as true for purposes of determining whether the Amended Complaint asserts a plausible claim for relief.[3]

---

[3] We emphasize that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). The plausibility standard "does not impose a probability requirement," *Twombly*, 550 U.S. at 556; it only requires a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal,* 556 U.S. at 678. Accordingly, even though Clondalkin believes that McDermott's claims are outright fabrications, we, as a reviewing court, must assume that these non-conclusory allegations are true for purposes of determining whether it is plausible that Clondalkin breached its contractual obligations to McDermott. *See Connelly*, 809 F.3d at 789 (citing *Iqbal,* 556 U.S. at 681).

10

**C. Step Three: Construing the Allegations in McDermott's Favor**

"Even after *Twombly* and *Iqbal,* a complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Connelly*, 809 F.3d at 790 (citing *Phillips,* 515 F.3d at 231 (noting that *Twombly* "leaves intact" the pleading standard under which "detailed factual allegations" are not required). In light of this highly favorable standard of review, and taking the allegations as true when construed in the light most favorable to McDermott, we find that the Amended Complaint is sufficient.

In the Amended Complaint, McDermott alleges Clondalkin's supervisory board acted unreasonably and exceeded its discretion by not complying with the terms of the bonus plan, intentionally understating the EBITDA data, and miscalculating his bonus by at least 50%. *See*, *e.g.*, App. 178–79 at ¶ 36–37, 39. He supports these allegations by alleging that his bonus should have been higher due to Clondalkin's financial performance at the time he departed the company, and continued market success after his departure. He then concludes by alleging that the EBITDA data, which is solely in possession of Clondalkin, will prove these allegations. At minimum, McDermott has pleaded sufficient factual allegations to survive a motion to dismiss. Stated otherwise, the Amended Complaint provides fair notice of a plausible claim that Clondalkin breached the Severance Agreement by not properly calculating McDermott's bonus in

11

accordance with the terms of the Bonus Plan.  Accordingly, the Amended Complaint survives Clondalkin's Rule 12(b)(6) challenge.[4]

IV.

For the aforementioned reasons, we find that McDermott has alleged facially plausible claims sufficient to survive a motion to dismiss.  Accordingly, we will vacate the District Court's Order dismissing the Amended Complaint and remand for further proceedings consistent with this opinion.

---

[4] Because we have found that the Amended Complaint pleads a plausible breach of contract claim, it follows that it also pleads a plausible claim under the WPCA, which the parties agree is dependent upon a viable breach of contract claim.