# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| In re AmerisourceBergen Corp. (n/k/a | ) | Consolidated C.A. No. |
| Cencora) Delaware Insurance Litigation | ) | N22C-01-182 MAA CCLD |
| | ) | |
| | ) | |

Submitted: October 3, 2024
Decided: December 23, 2024

## MEMORANDUM OPINION

*CGL Insurers' Motion for Partial Summary Judgment:*
**GRANTED.**

*Amerisource's Motion for Partial Summary Judgment:*
**DENIED.**

Julie M. O'Dell, Esquire, of SMITH, KATZENSTEIN & JENKINS, LLP, Wilmington, DE, and Christopher J. St. Jeanos, Esquire (Argued), and John Goerlich, Esquire, of WILLKIE FARR & GALLAGHER, LLP, Washington, D.C., *Attorneys for Plaintiff National Union Fire Insurance Company of Pittsburgh, PA.*

Carmella P. Keener, Esquire, of COOCH AND TAYLOR, P.A., Wilmington, DE, and Patrick Bedell, Esquire (Argued), of BATESCAREY, LLP, Chicago, IL, *Attorneys for Plaintiff American Alternative Insurance Corporation and Swiss Re Corporate Solutions Capacity Insurance Corporation.*

Lauren A. Ferguson, Esquire, of KATZENSTEIN & JENKINS, LLP, Wilmington, DE, and Kathryn M. Guinn, Esquire, of DENTONS US, LLP, Denver, CO, *Attorneys for Plaintiff XL Insurance America.*

Sarah T. Andrade, Esquire, of BAYARD, P.A., Wilmington, DE, and Sara K. Hunkler, Esquire, of RUGGERI PARKS WEINBERG, LLP, Washington, D.C., *Attorneys for Plaintiffs Hartford Casualty Insurance Co., Hartford Fire Insurance Co., Nutmeg Insurance Co., and Twin City Fire Insurance Co*.

Jennifer C. Wasson, Esquire (Argued), and Ryan D. Kingshill, Esquire, of POTTER ANDERSON & CORROON, Wilmington, DE, and Courtney C.T. Horrigan, Esquire and Stephanie E. Gee, Esquire, of REED SMITH, LLP, Pittsburgh, PA, *Attorneys for Amerisource Defendants.*

**Adams, J.**

2

**INTRODUCTION**

This action presents the latest in a series of lawsuits filed by various insureds to obtain insurance coverage for actions arising from the opioid crisis. This action concerns AmerisourceBergen Corp., AmerisourceBergen Drug Corp., and MWI Veterinary Supply, Inc. (collectively, "Amerisource"), who together form one of the largest wholesale distributors of opioids.

The parties here cross-moved for partial summary judgment. In resolving the cross-motions, the Court must decide whether various opioid lawsuits, filed across the nation, trigger the duty to defend and the duty to indemnify contained in Amerisource's insurance policies. The central question of the cross-motions requires the Court to determine the application of the Supreme Court of Delaware's decision in *ACE American Insurance Co. v. Rite Aid Corp.*[1] ("*Rite Aid*"). In *Rite Aid*, the Supreme Court of Delaware issued a key ruling governing insurance litigation for opioid cases, finding that claims seeking generalized economic damages to redress the systemic problems of the opioid crisis are not claims seeking damages because of bodily injury.[2] Because suits for generalized economic damages do not seek damages because of bodily injury, they do not invoke the duty to defend under the relevant insurance policies. *Rite Aid* guides this Court's determination of

---

[1] 270 A.3d 239 (Del. 2022) (hereinafter "*Rite Aid*").
[2] *Id*. at 241.

the CGL Insurers'[3] duty to defend and indemnify Amerisource for the costs it incurred in the underlying litigation.

For the reasons explained below, the CGL Insurers' Motion for Partial Summary Judgment is **GRANTED** and Amerisource's Motion for Partial Summary Judgment is **DENIED**.

## FACTS AND PROCEDURAL HISTORY

### A. The Parties

Defendant AmerisourceBergen Drug Corp. is a Delaware corporation with its principal place of business in Pennsylvania.[4]  Defendant Amerisource Corp. is a Delaware corporation with its principal place of business in Pennsylvania.[5]

---

[3] The Court will refer to all the Plaintiff insurers collectively moving for partial summary judgment as the "CGL Insurers" or "Plaintiffs."  The CGL Insurers consist of Arrowood Indemnity Company, formerly known as Royal Indemnity Company, individually and as successor in interest to Royal Insurance Company of America ("Arrowood"); National Union Fire Insurance Company of Pittsburgh, PA. ("National Union"); American Alternative Insurance Corp. ("AAIC"); Swiss Re Corporate Solutions Capacity Insurance Corporation as successor in interest to  North American Capacity Insurance Co. ("NAC"); XL Insurance America, Inc. ("XL"); Hartford Casualty Insurance Co. ("Hartford Casualty"); Hartford Fire Insurance Co. (Hartford Fire"); Nutmeg Insurance Co. ("Nutmeg"); and Twin City Fire Insurance ("Twin City").

Resolution of the cross-motions filed on September 28, 2023 (D.I. 146; D.I. 177) was delayed by a Liquidation and Injunction Order with Bar Date ("Liquidation Order"), entered by the Delaware Court of Chancery on November 8, 2023, which "restrains all persons that have notice of the Liquidation Order from, among other things, 'instituting or further prosecuting any action at law or in equity or in other proceedings against Arrowood.'"  D.I. 283 Ex. A. at 7.  The Court faced decisions regarding the scope of the Liquidation Order, and whether Arrowood would remain party to this action.  Ultimately, on April 10, 2024, the Court ordered that Arrowood be severed from the other CGL Insurers.  D.I. 318.  The Arrowood insolvency issues delayed the briefing schedule, with reply briefs not submitted until June 28, 2024.  D.I. 328; D.I. 329.

[4] *Arrowood Indem. Co. v. AmerisourceBergen Corp.*, 2023 WL 2726924, *2 (Del. Super. Mar. 30, 2023) (D.I. 92) (hereinafter the "MTD Opinion").

[5] *Id*.

AmerisourceBergen Corp. acquired MWI Veterinary Supply, Inc. in 2015.[6] Each of the CGL Insurers issued commercial general liability insurance policies to one or more of the Amerisource defendants.[7]

## B. The Opioid Lawsuits

As a result of the opioid crisis in the United States, numerous state and local government entities, Native American tribes, and other underling plaintiffs (the "Underlying Plaintiffs") filed lawsuits against prescription opioid manufacturers, drug distributors, and retail pharmacies. (The "Opioid Lawsuits"). The Underlying Plaintiffs alleged systemic failures within the pharmaceutical industry generated opioid sales and use far in excess of any reasonable medical necessity, which induced a corresponding crisis of addiction, injury, and death.[8] The Underlying Plaintiffs named AmerisourceBergen, a distributor of prescription opiates, as a defendant in several thousand of these lawsuits across the country.[9]

Many of the underlying Opioid Lawsuits have been consolidated into a Federal multidistrict litigation captioned *In re National Prescription Opiate*

---

[6] D.I. 177 (Opening Br. in Supp. of Pl. Insurers' Mot. for Partial Summ. J.) at 8 (hereinafter "Insurers Opening").

[7] MTD Opinion *2-*3.

[8] *See Id.* at *2 ("AmerisourceBergen has been named as a defendant in several thousand lawsuits across the country relating to Defendants' distribution of prescription opioids. These lawsuits were brought by state and local government entities, Native American tribes, and others seeking economic damages, injunctive relief, and other remedies against prescription opioid manufacturers, drug distributors, and retail pharmacies for alleged harm resulting from the opioid epidemic" (internal citations omitted").

[9] *Id.*

5

*Litigation.*[10] (The "MDL" or "MDL Action"). "Some of the cases in the MDL Action are designated as 'Track One' cases."[11] (The "Track One Cases"). The Track One Cases are "bellwether complaints" which "act as indicators of the content and allegations of the broader class of Opioid Lawsuits."[12] The Track One Cases "allege [Amerisource] violated its statutory duties under federal and state laws to monitor, detect, investigate, refuse to fill[,] and report suspicious orders of prescription opioids,"[13] and "do not allege AmerisourceBergen is liable to the plaintiffs for damages caused by bodily injury," instead seeking recovery for "economic damages the plaintiffs expended to combat the opioid epidemic."[14]

Amerisource has also been sued in various non-Track One suits, including suits from the following plaintiff government entities, which were explored in the recent Delaware Superior Court decision, *In re CVS Opioid Ins. Litig.*:[15]

- The Lake County Ohio Suit;[16]

- The Trumbull County Ohio Suit;[17]

---

[10] MDL No. 2804 (N.D. Ohio 2017).
[11] MTD Opinion *2.
[12] *Id*. (citation omitted).
[13] *Id*. (citation and quotation marks omitted).
[14] *Id*. (citation omitted).
[15] Insurers Opening at 10-11. *CVS* also addressed a lawsuit filed by the City of Philadelphia. *In re CVS Opioid Ins. Litig.*, 301 A.3d 1194, 1202 (Del. Super. 2023), *as corrected* (Sept. 14, 2023) (hereinafter "*CVS*"). Amerisource is not a defendant in that case and has not sought coverage for that action. Insurers Opening at 3 n.2. The Court, therefore, will not address the City of Philadelphia action.
[16] Insurers Opening Ex. 7.
[17] *Id.* at Ex. 8.

- The Nassau County, New York Suit;[18]

- The Suffolk County, New York Suit;[19]

- The Cherokee Nation Suit;[20] and

- The State of Florida Suit.[21]

Like the Track One Suits, these "Additional Representative Suits" (a term utilized by the Court in *CVS* and the Plaintiff CGL Insurers in these Motions) are brought by a governmental entity "seeking to recover its economic costs from responding to the opioid crisis."[22]

In 2021, roughly four years after the commencement of the MDL, Amerisource and the nations' other largest pharmaceutical distributors announced a Global Distributors Settlement Agreement, which resolved many of the Opioid Lawsuits filed against Amerisource.[23] (The "GDSA"). Amerisource's allocated share of the total GDSA settlement figure is $6.51 billion.[24] Amerisource must pay

---

[18] *Id.* at Ex. 9. The two New York Suits share a consolidated complaint. *See id.* at 27 (Referring to Ex. 9 as "NY Consol. Compl.").

[19] *Id.* at Ex. 9. The two New York Suits share a consolidated complaint. *See id.* at 27 (Referring to Ex. 9 as "NY Consol. Compl.").

[20] *Id.* at Ex. 10.

[21] *Id.* at Ex. 11.

[22] *Id.* at 11.

[23] D.I. 147 (AmerisourceBergen Corp. (n/k/a Cencora), AmerisourceBergen Drug Corp., and MWI Veterinary Supply, Inc's Opening Br. in Supp. of Their Mot. for Partial Summ. J.) at 11-12 (hereinafter "Amerisource Opening"); *See* Amerisource Opening Ex. A (hereinafter the "GDSA").

[24] Amerisource Opening at 12 fn. 14. GDSA § IV(I). Amerisource notes it is responsible for 31% of the GDSA Settlement Amount – i.e., $6.51 billion out of $21 billion. Amerisource argues that $5.5 billion of its liability is compensation for bodily injury, while the remainder of its liability is an amount to be paid for attorney's fees and costs. *Id.* at 12 fn. 14. In this opinion, the Court refers to Amerisource's total liability under the GDSA, which is $6.51 billion.

7

the $6.51 billion in damages to Delaware and fifty-three other States and Territories.[25]

> The GDSA defines the "Alleged Harms" for which it compensates:
>
> The alleged past, present, and future financial, societal, and public nuisance harms and related expenditures arising out of the alleged misuse and abuse of [Opioids and Opiates] . . . that have allegedly arisen as a result of the physical and bodily injuries sustained by individuals suffering from opioid-related addiction, abuse, death, and other related diseases and disorders, and that have allegedly been caused by the Settling Distributors.[26]

The GDSA also provides that the relevant Underlying Plaintiffs "sought compensatory restitution (within the meaning of 26 U.S.C. § 162(f)(2)(A)) as damages for the Alleged Harms allegedly suffered" by the Underlying Plaintiffs.[27] The GDSA defines its settlement amount "as compensation for alleged damage or harm arising out of alleged bodily injury"[28] which was allegedly caused by Amerisource.

By the time of the filing of the cross-motions at issue, the Additional Representative Suits and Track One Suits had been resolved by settlement.[29] The GDSA resolved many of the Opioid Lawsuits filed against Amerisource, including

---

[25] GDSA exhibit F.

[26] GDSA § I(D).

[27] *Id*. at § V(F)(2).

[28] *Id*. at § V(F)(3).

[29] D.I. 285 ("AmerisourceBergen Corp. (n/k/a Cencora), AmerisourceBergen Drug Corp., and MWI Veterinary Supply, Inc's Br. in Resp. to Pl. Insurers' Mot. for Partial Summ. J.") at 18 (hereinafter "Amerisource Resp.").

the Florida, Ohio, and New York Additional Representative Suits.[30]  The GDSA did not resolve the Track One Suits or Cherokee Nation Suit.  The Cherokee Nation Suit was resolved in November 2021 by a separate settlement agreement.[31]  (The "Cherokee Nation Settlement").  The Cherokee Nation Settlement defines the "Alleged Harms" it resolves as "a result of physical and bodily injuries sustained by individuals…"[32]  The Track One Suits, as alleged against Amerisource, were settled in December 2019.[33]  The "Track One Settlement Agreement" defines its settlement amount as "compensation for damage or harm arising out of alleged bodily injury."[34] (The "Track One Settlement Agreement," together with the GDSA and "Cherokee Nation Settlement," the "Relevant Settlements").  The CGL Insurers note that some of the Opioid Lawsuits against Amerisource remain unresolved.[35]

## C. The Insurance Policies

Amerisource, seeking to recover the costs of defending and settling the resolved Opioid Lawsuits, seeks coverage under its insurance policies issued by the CGL Insurers.  Each of the insurance policies cover liability "for" or "because of" "bodily injury" occurring during the policy's period.[36]  The policies that cover

---

[30] Amerisource Resp. at 19.  The New York and Ohio Additional Representative Suits initially had separate settlement agreements which were superseded by the GDSA.  *Id.* at 19 n.13.
[31] *Id.* at Appx. Vol. 2 Ex. L
[32] *Id.* at 20 (citing Amerisource Resp. Appx. Vol. 2 Ex. L at § II (2)).
[33] *Id.* at Appx. Vol. 2 Ex. M.
[34] *Id.* at 22 (citing Amerisource Resp. Appx. Vol. 2 Ex. M at ¶6).
[35] *Id.* at 12 (internal citation omitted).
[36] Insurers Opening at 8 (citation omitted).

liability "for bodily injury" contain the following language (or language that is substantially similar in all material respects):

> **What This Agreement Covers**
> **Bodily injury and property damage liability.**
> We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury… that:
> - happens while this agreement is in effect; and
> - is caused by an event.
>
> ***
> Bodily injury means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that result at any time from such physical harm, sickness, or disease:
> - Mental anguish, injury, or illness.
> - Emotional distress.
> - Care, loss of services, or death.[37]

The policies which cover liability "because of bodily injury" contain the following language (or language that is substantially similar in all material respects):

> **Section I.A** – We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", … to which this insurance applies.
> **Section VII.C** – "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or mental injury resulting from bodily injury.[38]

---

[37] *Id.* Ex. 3 at 1.
[38] *Id.* at Ex. 3 at 19-20.

**D. The Supreme Court of Delaware's Decision in *Rite Aid***

In 2022, the Supreme Court of Delaware issued its opinion in *ACE Am. Ins. Co. v. Rite Aid Corp.*[39] Rite Aid, a national pharmacy chain, faced allegations in the Track One Suits of "negligent distribution of opioids."[40] Rite Aid's CGL insurance policies covered claims because of bodily injury.[41] Rite Aid's CGL insurers denied coverage for the Track One Suits.[42] Rite Aid filed suit against its CGL insurers, in the Delaware Superior Court, alleging that those insurers had wrongfully denied coverage.[43] The Superior Court granted summary judgment to Rite Aid, finding that the economic losses sought by the government entity-plaintiffs in the Track One Suits were "arguably because of bodily injury," and thus invoked coverage under Rite Aid's CGL insurance policies.[44]

On appeal, the Supreme Court considered whether the Track One Suits, brought by government entities for economic damages resulting from the opioid epidemic, constituted damages "because of bodily injury," entitling underlying defendants to insurance coverage.[45] The Supreme Court, reversing the Superior

---

[39] *Rite Aid* at 239

[40] *Id.* at 252-253.

[41] *Id.* at 243.

[42] *Id.* at 243.

[43] *Id.* at 243.

[44] *Id.* at 243 (citing *Rite Aid Corp. v. ACE Am. Ins. Co.*, 2020 WL 5640817 at *16 (Del. Super. Sept. 22, 2020)).

[45] *Rite Aid* at 241.

11

Court, held that the Track One Suits did not allege damages "because of bodily injury."[46]  The Track One Suits therefore were not subject to insurance coverage.[47]

The Supreme Court ruled damages for or because of bodily harm are covered losses only when the underlying claims are asserted by: (1) the person injured, (2) a person recovering on behalf of the person injured, or (3) people or organizations that treated the person injured or deceased, who demonstrate the existence of, and cause of, the injuries.[48]  The Track One Suits fell into none of those three categories; therefore precluding coverage.[49]

The Supreme Court held that the counties could not allege they suffered personal injury, since they were not human plaintiffs.[50]  The county plaintiffs in the Track One Suits also sought "compensation for their economic losses," and did not sue "derivatively for the bodily injuries suffered by [their citizens] in the opioid crisis."[51]  Further, the "[Track One plaintiffs] expressly disclaimed all personal injury damages in the Track One Lawsuits and, as they say, their claims are 'not based on' the injuries of others."[52]  The Supreme Court ruled that, when an organization seeks treatment costs incurred in caring for bodily injury, "it must show

---

[46] *Id*. at 241, 250.
[47] *Id*.
[48] *Id*. at 247.
[49] *Id*. at 247.
[50] *Id*. at 248.
[51] *Id*. at 248.
[52] *Id*. at 247.

12

that it treated an individual with an injury, how much that treatment cost, and that the injury was caused by the insured."[53] The Track One plaintiffs did not provide such allegations; therefore, the Track One Suits did not fit into the third category of covered losses.[54] Because the Track One Suits did not fit into any of the three categories of covered losses, the insurers had no duty to indemnify Rite Aid.[55]

## E. The Delaware Superior Court Decision in *CVS*.

The Superior Court applied *Rite Aid* to hold that a group of insurers had no duty to defend CVS in either the Track One or Additional Representative Suits.[56] CVS, another national pharmacy chain, faced allegations in the same Track One Suits against Rite Aid and Amerisource, and allegations in the same Additional Representative Suits against Amerisource.[57] CVS sought defense and indemnification under its CGL insurance policies, which provide coverage for liability for or because of bodily injury.[58] CVS' insurers filed suit after the Delaware Supreme Court's decision in *Rite Aid* seeking declarations that their policies do not cover the Opioid Lawsuits against CVS.[59] CVS' insurers filed motions for partial

---

[53] *Id.* at 252 (citation omitted).
[54] *Id.* at 252.
[55] *Id.* at 254.
[56] *See CVS* at 1198 (granting CVS' insurers' motion for partial summary judgment and declaring that the insurers had no duty to defend or indemnify CVS).
[57] *Id.* at 1207.
[58] *Id.* at 1207; 1204-1206 (summarizing the relevant policy language, which is materially identical to the policy language at issue in this case).
[59] *Id.* at 1207

13

summary judgment, arguing that under *Rite Aid*, they had no duty to defend or indemnify CVS for the Opioid Lawsuits.[60]

The Superior Court summarized the *Rite Aid* ruling: "[t]he bodily injuries alleged in a given complaint must do more than 'explain and support' any economic loss the counties suffered. The individual physical injury must be 'the basis of the claims,' 'independently proven, and shown to be caused by the insured.'"[61] The Superior Court concluded that the policy language of CVS' relevant insurance policies was "substantively identical" to that at issue in *Rite Aid*.[62]

The *CVS* court held the Track One Suits did not allege a claim for bodily injury against CVS under the definition presented in *Rite Aid*.[63] The court reiterated the ruling in *Rite Aid* that damages for or because of bodily harm are covered losses only when the underlying claims are asserted by: (1) the person injured, (2) a person recovering on behalf of the person injured, or (3) people or organizations that treated the person injured or deceased, who demonstrate the existence of, and cause of, the injuries.[64] The Track One plaintiffs were not alleging that they suffered personal injuries, nor were they seeking to recover costs for the care of persons injured.[65] The court also held that the Track One plaintiffs were not seeking to recover on behalf of

---

[60] *Id*. at 1208.
[61] *Id*. at 1207 (quoting *Rite Aid* at 250 (internal citations omitted)).
[62] *CVS* at 1212.
[63] *Id*. at 1212.
[64] *Id*. at 1212 (citing Rite Aid at 247).
[65] *CVS* at 1213.

14

injured persons, as the Track One plaintiffs instead disclaimed personal injury claims and "do not base the claims on the injuries of others."[66] Accordingly, the court adopted the holding in *Rite Aid*, finding that CVS' insurance policies did not cover the Track One Suits.[67]

The *CVS* court next examined each of the Additional Representative Suits.[68] The court determined there was no duty to defend these claims, since they did not seek damages because of bodily injury.[69] In doing so, the court examined each of the Additional Representative Suits' complaints to determine whether they fit the three categories of covered losses announced in *Rite Aid*.[70] The court held that the Additional Representative Suits' plaintiffs did not seek remedies for their own personal injuries, the injuries of others, or the cost of caring for others.[71] The Additional Representative Suits either "specifically disclaim that they seek to recovery on behalf of others...[or] the nature of the allegations and the specific damages they seek again impart that they are seeking to recover generalized economic losses in responding to the opioid crisis."[72] The court held the absence of a duty to defend CVS necessarily precluded application of the duty to indemnify.[73]

---

[66] *Id*. at 1213.
[67] *Id*. at 1212-1213
[68] *Id*. at 1213.
[69] *Id*. at 1214.
[70] *Id*. at 1213-1214.
[71] *Id*. at 1213.
[72] *Id*. at 1213.
[73] *Id*. at 1217.

## F. Procedural History of the Instant Case.

In early 2022, after the Supreme Court's decision in *Rite Aid*, the CGL Insurers filed various complaints against Amerisource seeking to establish that there is no coverage for the Opioid Lawsuits under the insurance policies the CGL Insurers issued to Amerisource.[74] In response, Amerisource filed a Motion to Dismiss or Stay the Complaint, arguing the CGL Insurers' chosen venue was improper.[75] The Court denied the Motion to Dismiss in a Memorandum Opinion dated March 30, 2023.[76]

On September 28, 2023, the parties filed cross-motions for summary judgment.[77] Amerisource seeks a declaration that the CGL Insurers have a duty to indemnify Amerisource for the settlement liability incurred in the GDSA pursuant to the CGL insurance policies.[78] The CGL insurers seek a declaration that the Track One Suits and the Additional Representative Suits are not covered under the CGL Insurers' policies and that the CGL Insurers have no duty to defend or indemnify.[79] The Court heard oral argument on the cross-motions on October 3, 2024.[80]

---

[74] MTD Opinion at *7.
[75] D.I. 31.
[76] MTD Opinion at *13.
[77] D.I. 146; D.I. 177.
[78] Amerisource Opening at 1.
[79] Insurers Opening at 4, 38.
[80] D.I. 337.

16

**STANDARD OF REVIEW**

Pursuant to Delaware Superior Court Civil Rule 56(c), summary judgment "shall be rendered forthwith if…there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law."[81]  A genuine dispute about a material fact is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[82]  The burden is on the moving party to show the undisputed facts support its position.[83]  Once the burden is met, the burden shifts to the nonmoving party to "show that there are material issues of fact the ultimate fact-finder must resolve."[84]  A court will not grant summary judgment if "it appears that there is a material fact in dispute or that further inquiry into the facts would be appropriate."[85]  The moving party's claim must be "based on more than mere speculation."[86]

When the parties have filed cross-motions for summary judgment, "the standard for summary judgment 'is not altered.'"[87]  If "neither party argues the

---

[81] Del. Super. Ct. Civ. R. 56(c).

[82] *Gateway Ests., Inc. v. New Castle Cty.*, 2015 WL 13145613, at *13 (Del. Super. Sept. 19, 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986)).

[83] *Olga J. Nowak Irrevocable Tr. v. Voya Fin Inc.*, 2020 WL 7181368, at *3 (Del. Super. Nov. 30, 2020) (citing *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979)).

[84] *Id.*  (citing *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995)).

[85] *Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. May 31, 2013) (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962)).

[86] *Pazuniak L. Off., LLC v. Pi-Net Int'l, Inc.*, 2016 WL 3916281, at *2 (Del. Super. July 7, 2016).

[87] *Capano*, 2013 WL 2724634, at *2 (quoting *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1050 (Del. Super. 2001)) (internal quotation marks omitted).

existence of a genuine issue of material fact, 'the Court shall deem the motions to be the equivalent of a stipulation for a decision on the merits based on the record submitted with the[m].'"[88] However, even where cross-motions are filed, if "an issue of material fact exists, summary judgment is not appropriate."[89] "Under Delaware law, the interpretation of contractual language, including that of insurance policies, is a question of law," making these issues ripe for resolution on summary judgment.[90]

## ANALYSIS

### A. Choice of Law

Amerisource argues Pennsylvania law, rather than Delaware law, should apply to this dispute.[91] The Supreme Court of Delaware held in *Rite Aid* that a choice of law analysis is unnecessary because Pennsylvania and Delaware law do not conflict on the insurance coverage issues presented in that case.[92] The same coverage issues from *Rite Aid* are present here, and this Court has reiterated *Rite Aid's* holding in its decision resolving Amerisource's Motion to Dismiss.[93] Amerisource offers no Pennsylvania caselaw, published after *Rite Aid*, indicating that this Court should

---

[88] *Radulski v. Liberty Mut. Fire Ins. Co.*, 2020 WL 8676027, at *4 (Del. Super. Oct. 28, 2020) (quoting Del. Super. Civ. R. 56(h)).

[89] *Motors Liquid. Co. DIP Lenders Tr. v. Allianz Ins. Co.*, 2017 WL 2495417, at *5 (Del. Super. June 8, 2017) (citing *Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1039 (Del. Ch. 2008)).

[90] *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 286 (Del. 2001) (citation omitted).

[91] Amerisource Opening at 20, Amerisource Resp. at 30.

[92] *Rite Aid* at 244–245.

[93] MTD Opinion at *12.

18

reinvestigate the position of the Supreme Court of Delaware on the existence of a conflict of laws. Under both the law of the case[94] and binding Delaware caselaw, this Court will not reexamine the choice of law analysis. The laws of Delaware, the forum state, apply to the issues presented in these Motions.[95]

B. **The CGL Insurers Have No Duty to Defend or Indemnify Amerisource in the Track One and Additional Representative Suits, Because Those Suits do not Seek Damages "Because of Bodily Injury."**

1. **Parties' Contentions**

The CGL Insurers seek a declaration that Amerisource's relevant CGL insurance policies do not provide coverage for the Track One Suits and Additional Representative Suits.[96] Invoking *CVS* and *Rite Aid*, the CGL Insurers argue their policy language is substantively identical to the language at issue in those cases.[97] The CGL Insurers also argue that the allegations against Amerisource in the Track One Suits and Additional Representative Suits allege generalized economic

---

[94] *Delaware Dep't of Nat. Res. & Env't Control v. Food & Water Watch*, 246 A.3d 1134, 1138 (Del. 2021) ("The law of the case doctrine requires that issues already decided by the same court should be adopted without relitigation, and once a matter has been addressed in a procedurally appropriate way by a court, it is generally held to be the law of the case") (citation and internal quotation marks omitted).

[95] *IDT Corp. v. U.S. Specialty Ins. Co.*, 2019 WL 413692, at *6 (Del. Super. Jan. 31, 2019) ("Delaware courts recognize that, where possible, a court should avoid a choice-of-law analysis altogether if the result would be the same under the law of either of the competing jurisdictions.") (citation omitted); *BeautyCon Media ABC Trust Through Saccullo Bus. Consulting, LLC v. New General Mkt. P'rs, LLC*, 2023 WL 5164148, at *5 (Del. Super. Aug. 11, 2023) ("If there is not an actual conflict, the court applies the substantive law of the forum state.") (citation omitted).

[96] Insurers Opening at 4.

[97] *Id*. at 21.

damages, just like the allegations at issue in *CVS* and *Rite Aid*.[98] Thus, this Court should adopt the conclusions of the Courts in *CVS* and *Rite Aid*.[99]

Amerisource argues the holdings of *CVS* and *Rite Aid* regarding the duty to defend are not applicable to any cases resolved under the GDSA because Amerisource has settled most of their cases.[100] This is "significant," Amerisource argues, "because it changes the framework for analyzing coverage from the *Rite Aid* duty to defend evaluation to a duty to indemnify evaluation."[101] Thus, "[a]n insurer's duty to defend and its duty to indemnify are independent of each other and are analyzed differently."[102] Amerisource also notes the GDSA and other relevant settlement agreements define their settlement amounts as compensation for "bodily injury,"[103] and asks this Court to adopt that definition by judicial notice.[104] As an alternative argument, Amerisource argues that the cases settled by the GDSA satisfy the *Rite Aid* duty-to-defend analysis.[105]

In response to Amerisource's Motion, the CGL Insurers argue the duty to indemnify cannot apply where there is no duty to defend, and there is no duty to

---

[98] *Id*. at 22, 25-26.
[99] *Id*. at 21, 30-32.
[100] Amerisource Resp. at 25.
[101] *Id*.
[102] Amerisource Opening at 26. (citation and internal quotation marks omitted).
[103] Amerisource Resp. at 27; GDSA § V(F)(3).
[104] Amerisource Opening at 3-5.
[105] Amerisource Resp. at 40.

defend in this case.[106] The CGL Insurers argue the Relevant Settlement Agreements' definitions of their own settlement amounts are not binding on this Court.[107] The CGL Insurers also argue that other coverage defenses preclude the Court from granting Amerisource's Motion.[108]

### 2. The CGL Insurers' do not owe a Duty to Defend or a Duty to Indemnify for the Track One and Additional Representative Suits.

The Court's determination regarding the duty to defend is dispositive of the cross-motions. Even though the Track One Suits and Additional Representative Suits have settled, a ruling on the duty to defend as to these Suits will apply to many other unresolved Opioid Lawsuits filed against Amerisource which concern substantively identical policy language and allegations seeking economic damages.[109]

According to Amerisource, because the Track One and Additional Representative Suits are resolved by settlement, the only potentially applicable duty under the CGL Insurers' policies is the duty to indemnify, and the duty to defend

---

[106] D.I. 284 (Pl. Insurers' Answering Br. in Opp'n. to the ABC Entities' Mot. for Partial Summ. J. on the Duty to Indemnify for the Glob. Distrib. Settlement Agreement) at 15 (hereinafter "Insurers Resp.").

[107] Insurers Resp. at 25-38.

[108] *Id.* at 38.

[109] *See* Insurers Opening at 11-12 n.7 ("While the Insurers limit the relief they seek in this Motion to the Track One Suits and the Additional Representative Suits, the overwhelming majority of the Opioid Lawsuits bear the same critical characteristics…Granting the Insurers' Motion would thus affect not just the Track One and Additional Representative Suits but would in fact all but resolve [Amerisource's] claims for coverage for every single Opioid Lawsuit brought by a governmental entity or other plaintiff seeking to recover its own aggregate economic costs incurred in responding to the opioid crisis.").

21

analysis outlined in *Rite Aid* and *CVS* is inapplicable.[110]  Under Amerisource's

framework, the Relevant Settlements' terms, including the declaration they resolve

claims for "bodily injury," guide this Court's analysis.[111]

Amerisource's attempt to end-run *Rite Aid* and *CVS* is unconvincing.  First,

*Rite Aid* teaches us that the duty to defend analysis is based on the allegations in the

underlying suit's complaint, not any subsequent settlement agreement.[112]

Second, Amerisource ignores basic principles of insurance law; that is, that

the duty to defend is broader than the duty to indemnify.[113]  Neither party disputes

that "[t]he duty to defend is broad."[114]  "An 'insurer has an obligation to defend its

insured, even if the action against the insured is groundless, whenever the

complaint ... may potentially come within the coverage of the policy.'"[115]  The duty

to defend reaches those claims that may fall under the insurance policies, whereas

---

[110] Amerisource Resp. at 18, 25.

[111] *Id.* at 18, 25.

[112] *Rite Aid* at 246 (examining the complaints in the Track One Suits).  At oral argument, the parties discussed the Supreme Court of Delaware's decision in *Am. Ins. Grp. v. Risk Enter. Mgmt., Ltd.*, 761 A.2d 826 (Del. 2000).  Mots. for Partial Summ. J. Tr., Thursday, October 3, 2024 at 58:12-59:22; 89:15-91:9 (hereinafter "Tr.").  In *Risk Enterprise*, the Supreme Court ruled that when a duty to defend analysis is conducted after discovery has commenced, the Court should not limit its analysis to the allegations in the complaint and instead consider the full record.  *Risk Enter.* 761 A.2d at 829.  This case was decided over 21 years before *Rite Aid*, in which the Supreme Court of Delaware limited its analysis to the allegations in the Track One Suits' complaints.  *Rite Aid* at 246-47.  Accordingly, this Court limits its duty to defend analysis to the allegations in the relevant complaints as directed by *Rite Aid*.

[113] *CVS* at 1216-1217.

[114] *Id.* at 1211 (citation omitted).

[115] *Rite Aid* at 246. (quoting *Heffernan & Co. v. Hartford Ins. Co. of Am.*, 614 A.2d 295, 298 (1992)).

22

the duty to indemnify only covers those claims that ultimately invoke the policy's coverage after liability is finalized.[116] While the duty to defend and indemnify are distinct duties, in the absence of a duty to defend, "[n]or would there be a duty to indemnify since the duty to defend is broader than the duty to indemnify." [117]

Third, Amerisource's position that the duty to defend analysis is inapplicable is contradicted by its actions. Amerisource brought a counterclaim seeking defense costs more than a year after the GDSA was finalized in July 2021.[118] Amerisource has not withdrawn this counterclaim.[119] Nor has Amerisource indicated an intention to withdraw the counterclaim.[120] Amerisource cannot rewrite the CGL Insurers' motion to shift the analysis away from the duty to defend framework provided in *Rite Aid*.

---

[116] *See* 3 Martha A. Kersey, *New Appleman On Insurance Law Library Edition* 18-1 (Jeffrey E. Thomas, Francis J. Mootz, III eds., 2014) ("It is routinely recognized that the scope of the duty to indemnify is narrower than the duty to defend. . . . [A]n insurer may have a duty to defend any claim against its insured which *arguably* or *potentially* falls within the terms of the policy, an insurer is only obligated to indemnify its insured for claims that *actually* fall within the terms of the policy." (emphasis in original)).

[117] *Liggett Gp. Inc. v. Affiliated FM Ins. Co.*, 2001 WL 1457041, *3 n.22 (Del. Super. Sept. 12, 2001), *aff'd sub nom, Liggett Gp., Inc. v. Ace Prop. & Cas. Ins. Co.*, 798 A.2d 1024 (Del. 2002); *See also Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 n.7 (2006) ("because the duty to defend is broader [than the duty to indemnify], a finding that it is not present will also preclude a duty to indemnify.") (citations omitted).

[118] D.I. 102 (Defs.-Countercl.-Pl., AmerisourceBergen Corp., and AmerisourceBergen Drug Corp.'s Answer, Affirmative Defenses, and Countercls.) at 128.

[119] D.I. 328 (Reply Br. in Supp. of Pl. Insurers' Mot. for Partial Summ. J.) at 7 (hereinafter "Insurers Reply").

[120] *Id.*; *See also* Tr. 58:2-3 ("Well, we don't concede, Your Honor, that there was no duty to defend here").

Finally, while true that the Relevant Settlements state they resolve claims for "bodily injury," the Court will not blindly adopt that contention. To do so would encourage litigants to manipulate settlement language to secure CGL insurance coverage where it would otherwise not exist. The Court is obligated to determine, using *Rite Aid* as a guide, whether the Relevant Settlements actually settle claims for bodily injury.[121]

The Court can apply *Rite Aid* to the Track One and Additional Representative Suits to determine the duty to defend, and, if that duty does not exist, also resolve any question about the duty to indemnify.

As for the Track One Suits, those Suits seek the same remedies against Amerisource as were sought against Rite Aid, as "[b]oth [of the Track One Suits'] complaints allege the liability of all defendants for statutory nuisance, common-law nuisance, negligence, and civil conspiracy against all defendants."[122] The Supreme

---

[121] The Court declines Amerisource's request that the Court take judicial notice of the "bodily injury" language of the GDSA to resolve its claim for indemnification of the GDSA Settlement Amount. Amerisource explains that the statements in the GDSA were confirmed by the Delaware Attorney General (who signed the GDSA), the Delaware Superior Court (which approved the GDSA), and the Delaware Legislature (which created a Prescription Opioid Settlement Fund to allocate the settlement funds to treat opioid-related bodily injuries). While the Court recognizes these facts, Amerisource asks that the Court take notice of the language of the Relevant Settlements "for the *legal proposition* that the claims and liability disposed of in the GDSA involve covered damages because of bodily injury." Insurers Resp. at 34. This would require the Court to ignore the analytical framework of *Rite Aid* and would enable litigants to secure insurance coverage where it should not exist by careful settlement drafting.

[122] Insurers Opening at 22; *Id.* at Ex. 5 at 323-354; *Id.* at Ex. 6 at 303-333. The Track One Suits also allege RICO violations and Ohio Deceptive Trade Practices claims against Amerisource. Insurers Opening Ex. 5 at 292-323; *Id.* at Ex. 6 at 273-303. The Defendants do not argue that the additional RICO and Ohio Deceptive Trade Practices claims change the outcome from that

Court of Delaware held in *Rite Aid* that the allegations presented in these complaints, seek damages to compensate for a systemic public problem rather than damages for individual personal injuries and specific treatments.[123] The policy language at issue in this case is substantively identical to that at issue in *Rite Aid*, as the CGL Insurers' policies cover suits seeking damages for "bodily injury."[124] The holding in *Rite Aid* – that the Track One Suits do not invoke duty to defend coverage, because they do not seek damages for "bodily injury," instead alleging generalized economic damages – is equally applicable to Amerisource. The CGL Insurers' policy language and the relevant Track One Suits' allegations are substantively identical for both Amerisource and Rite Aid. Because the CGL Insurers owed Amerisource no duty to defend in the Track One Suits, they also owe no duty to indemnify Amerisource for those Suits.

The Superior Court already determined in *CVS* that the Additional Representative Suits do not invoke the duty to defend under the policy language at issue in *CVS*, which is substantively identical to the policy language in the CGL Insurers' policies.[125] As in *CVS*, the Amerisource CGL Insurers' policies only

---

presented in *Rite Aid*. These causes of action allege claims seeking damages for misconduct which created the systemic opioid crisis, not claims because of bodily injury.
[123] *Rite Aid* at 246-247.
[124] *See* Insurers Opening at 8 ("all the Policies at issue in this Motion are liability policies that only provide coverage for the ABC Entities' liability "because of 'bodily injury'" sustained by individual people during the policy period."); *Rite Aid Corp. v. ACE Am. Ins. Co.*, 2020 WL 5640817, at *3 (Del. Super. Sept. 22, 2020), *rev'd on other grounds*, 270 A.3d 239 (Del. 2022).
[125] *CVS* at 1198.

impose a duty to defend for cases seeking damages because of "bodily injury."[126] The Court in *CVS* reached the well-reasoned conclusion that the Additional Representative Suits do not allege a claim for damages "because of bodily injury," as defined in *Rite Aid*.[127] The Additional Representative Suits instead allege claims for generalized economic damages, just like those claims presented in the Track One Suits.[128] These Additional Representative Suits allege the same generalized economic damages claims against CVS and Amerisource.[129] The Court adopts the holding from *CVS*.

The Additional Representative Suits' plaintiffs do not seek to recover for personal injuries they sustained or to recover damages for bodily injury on behalf of the person injured.[130] The plaintiffs in the Additional Representative Suits also do not seek damages for the cost of *treating* the injured person while demonstrating the existence and cause of the injury.[131] The Additional Representative Suits instead

---

[126] Insurers Opening at 8; Insurers Opening Ex. 3; *CVS* at 1212.
[127] *CVS* at 1213.
[128] *Id*. at 1213.
[129] *See, e.g.,* Insurers Opening Ex. 10 (naming both CVS and AmerisourceBergen Drug Corp. as defendants and alleging the same facts against all defendants). Plaintiffs note that CVS and Amerisource are not named defendants in the same complaint for the Lake and Trumbull County Additional Representative Suits. Insurers Opening at 30-31 n.16. Plaintiffs define this as the result of a "quirk of procedure." The allegations against Amerisource are claims for generalized economic damages, just as they were in CVS. Any differences between the complaints against CVS and Amerisource do not change the outcome from that discussed in CVS. *Compare* Insurers Opening Ex. 7 *and* Insurers Opening Ex. 8 (the allegations against Amerisource in the Trumbull and Lake County Additional Representative) *with* CVS at 1201 (explaining the allegations against CVS in the Trumbull and Lake County Additional Representative Suits).
[130] *CVS* at 1213.
[131] *Id*. at 1213-1214.

seek to recover "generalized economic losses in responding to the opioid crisis," and are analogous to the Track One Suits examined in *Rite Aid*.[132] For the same reasons articulated in *CVS*, the CGL Insurers did not owe a duty to defend Amerisource for the Additional Representative Suits. The CGL Insurers therefore owe no duty to indemnify Amerisource for the Additional Representative Suits.

Amerisource argues that, even under *Rite Aid's* the three-category approach, Amerisource is entitled to coverage under the CGL Insurance policies for the Additional Representative Suits resolved by the GDSA because those claims were brought on behalf of injured persons or by entities who treated injured persons.[133] This argument about the Additional Representative Suits has already been rejected by the holding in *CVS*. The Court sees no reason that an application of the *Rite Aid* test to the same Additional Representative Suits would create different results under materially identical insurance policies. The holding in *CVS*, that there is no duty to indemnify for the Additional Representative Suits, is equally applicable here.

Because the CGL Insurers do not owe a duty to defend or indemnify Amerisource for the Track One and Additional Representative Suits, Plaintiff CGL Insurers' Motion for Partial Summary Judgment is **GRANTED**.

---

[132] *Id.* at 1213.
[133] Amerisource Resp. at 40-41.

### 3. The Resolution of the Duty to Defend Issue also Resolves the Duty to Indemnify Issue.

The resolution of the Plaintiffs' Motion also resolves the portions of Amerisource's Motion which apply to those Additional Representative Suits resolved by the GDSA. For suits in which the duty to defend is inapplicable, there can be no duty to indemnify.[134] As to any other suits resolved in the Relevant Settlements which potentially invoke coverage under the CGL Insurers' policies, the Court directs the parties to meet and, informed by this Court's Opinion, confer over which other suits, resolved by the GDSA, fail to state a claim for "bodily injury" damages, and therefore are ineligible for indemnification.

## CONCLUSION

For the reasons explained above, the CGL Insurers' Motion for Partial Summary Judgment is **GRANTED**. Amerisource's Motion for Partial Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

---

[134] *Liggett Gp. Inc. v. Affiliated FM Ins. Co.*, 2001 WL 1457041, *3 n.22 (Del. Super. Sept. 12, 2001), *aff'd sub nom, Liggett Gp., Inc. v. Ace Prop. & Cas. Ins. Co.*, 798 A.2d 1024 (Del. 2002); *See also Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 n.7 (2006) ("because the duty to defend is broader [than the duty to indemnify], a finding that it is not present will also preclude a duty to indemnify.") (citations omitted).